Argued and submitted May 4, decision of the Court of Appeals reversed, judgment of
post-conviction court reversed and case remanded to that court for further
proceedings June 21, reconsideration denied August 30, 1988

SONDRA DeANGELO,
*Petitioner on Review,*

*v.*

SCHIEDLER,
*Respondent on Review.*

(CC 86-C-10516; CA A42588; SC S34863)

757 P2d 1355

Wayne Mackeson of Des Connall and Dan Lorenz, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

JONES, J.

**JONES, J.**

This is a post-conviction appeal. We review the judgment of the post-conviction court for the constitutionality of the sentence. ORS 138.530(1)(c).

Petitioner pled no contest to three counts of theft in the first degree and three counts of forgery in the first degree. All of the charges arose from her misappropriation of money, in various forms, from an elderly woman for whom she acted as companion. Petitioner was found guilty and sentenced to five years on each count. The sentences for the forgery counts were to run concurrently with those for the theft counts, but the sentences for the theft counts were to run consecutively. Petitioner sought post-conviction relief on several grounds, particularly that she was not given an adequate opportunity to be heard on her own behalf at the time of sentencing. The post-conviction court found that petitioner had not been denied that right. The Court of Appeals affirmed without opinion. *DeAngelo v. Schiedler,* 89 Or App 87, 747 P2d 415 (1987). We reverse the decision of the Court of Appeals.

■ Petitioner's sole complaint to this court is that her right of allocution[1] was denied by the trial court. She claims

---

[1] In this context, "allocution" refers to a convicted defendant's opportunity to speak before sentencing, although historically the "allocution" referred specifically to the judge's solemn question to the prisoner at the bar whether the prisoner knew any reason why judgment should not be pronounced upon her. A commentator discussed it as follows:

"Allocution, sometimes called 'the allocutus' is of such ancientness that it is difficult, if not impossible, to discover its historical origin. In philology, as in law, allocution is an address, especially a formal, hortatory, authoritative address. * * *

"* * * * *

"Chitty in the chapter 'Of the Judgment, and its Incidents' had this to say, (and it has been most frequently quoted and referred to):

" 'It is now indispensably necessary, even in clergyable felonies, that the defendant should be asked by the clerk if he has any thing to say why judgment of death should not be pronounced on him; and it is material that this appear upon the record to have been done; and its omission, after judgment in high treason, will be a sufficient ground for the reversal of the attainder. On this occasion, he may allege any ground in arrest of judgment; or may plead a pardon, if he has obtained one * * *. If he has nothing to urge in bar, he frequently addresses the court in mitigation of his conduct, and desires their intercession with the king or casts himself upon their mercy. After this nothing more is done, but the proper judge pronounces the sentence.' "

Barrett, *Allocution,* 9 Mo L Rev 115, 115, 117-18 (1944) (quoting 1 Chitty Cr L § 700) (emphasis omitted).

that the right of allocution is of constitutional magnitude, asserting that right under both the state and federal constitutions.

Article I, section 11, of the Oregon Constitution states that "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." In construing this provision, this court in *State ex rel Russell v. Jones,* 293 Or 312, 315, 647 P2d 904 (1982), stated that "[t]he term 'criminal prosecution' includes sentencing, a stage at which a judicial decision affecting a defendant's future liberty is made. Obviously, then, a defendant is entitled 'to be heard by himself and counsel' at sentencing."

There appears to be no disagreement that a "criminal prosecution" for the purposes of Article I, section 11, includes an ordinary sentencing hearing. *See State ex rel Russell v. Jones, supra,* 293 Or at 331 (Peterson, J., dissenting on other grounds); *cf. Perry v. Williard,* 247 Or 145, 147, 427 P2d 1020 (1967); *Gebhart v. Gladden,* 243 Or 145, 149, 412 P2d 29 (1966) (without mentioning Article I, section 11, stating that sentencing proceedings are part of the criminal prosecution). Once that has been established, it requires almost no interpretive work on our part to decide that defendant has the right, not only procedural, but constitutional, to be heard at sentencing, since the Oregon Constitution unambiguously grants the accused the right to be heard during the entire criminal prosecution.

We are not alone in concluding that the "right to be heard" under a state constitution includes the right of allocution. The Rhode Island Supreme Court in *Robalewski v. Superior Court,* 197 A2d 751, 753 (RI 1964), held that the language of Article I, section 10, of the Constitution of Rhode Island that a defendant in a criminal prosecution has the "liberty to speak for himself" included the common-law right of allocution. The Rhode Island court recognized that this guarantee did not originate with the state's constitution but stemmed from long-settled common-law rights of criminal defendants. In *Robalewski* the court held that one of the "precious fruits" of the right of an accused to be at "liberty to speak for himself" was the ancient common-law right of allocution. *Ibid.* The Rhode Island court did not cite any potential federal constitution violation, nor do we.

Because the Oregon Constitution affords defendant a right to speak at sentencing, the claim under the United States Constitution disappears. As explained by Justice Lent in *State ex rel Russell v. Jones,*

"The Sixth Amendment is not by its terms applicable to the states. It is applicable only so far as its protection is necessary under the Fourteenth Amendment to the United States Constitution to ensure that a defendant not be deprived by the state of his 'life, liberty, or property, without due process of law.' * * * [Once the court has recognized that the Oregon Constitution grants the right a petitioner argues for,] can there be any cognizable claim that the state is depriving him of life, liberty or property without due process? That claim has become irrelevant because the state is affording him due process under state law. There is no need, in either logic or law, to reach his Sixth Amendment contention." 293 Or at 320-21 (Lent, J., concurring).

■     The only remaining issue, therefore, is whether defendant was able effectively to exercise her right to be heard or if instead the sentencing judge violated that right by cutting her statement off in mid-sentence. The right to be heard is not unlimited. Even at trial, if the defendant decides to speak on her own behalf, the evidence introduced through that testimony is subject to the ordinary requirements that it not be irrelevant.

■ ■     The right to speak at a sentencing hearing should logically include the right to make any statements relevant to existing sentencing and parole practices. For instance, Oregon's current "modified just deserts" approach to incarcerating individuals requires the sentencing judge to be fully informed of the defendant's criminal history, the crime severity, and aggravating and mitigating matters before imposing sentence. *See, e.g,* ORS 137.077, 137.080, 144.185. Many courts addressing the right of a defendant to speak at sentencing recognize that a prime reason for allowing such a right is to provide the defendant an opportunity to plead for mitigation of the sentence. *See, e.g., Green v. United States,* 365 US 301, 304, 81 S Ct 653, 5 L Ed 2d 670 (1961); *State v. Allie,* 147 Ariz 320, 710 P2d 430 (1985); *People ex rel. McKevitt v. District Court,* 167 Colo 221, 477 P2d 205 (1968); *State v. Webb,* 242 Kan 519, 748 P2d 875 (1988). We agree with the Arizona court in *State v. Allie* that a defendant should be able to state any

reason why he or she feels sentence should not be pronounced and, in addition to presenting mitigating evidence, be given an opportunity to make any relevant personal comments to the court. This includes, but is not limited to, statements of remorse, apology, chagrin, or plans and hopes for the future. Some defendants might even wish to plead for maximum punishment in an attempt to achieve some purported good.[2]

■ ■　Turning to the present case, after defense counsel's statement to the court on behalf of petitioner, the court asked petitioner if she had anything to say before the court pronounced sentence. The following colloquy took place:

> "[PETITIONER'S TRIAL COUNSEL]:　Your Honor, prior to sentencing, [petitioner] would like to make a comment or two. Would that be permitted?

---

[2] Without suggesting that a convicted criminal in Oregon would speak so eloquently, Mohandas Gandhi's "Plea for the Severest Penalty, Upon His Conviction for Sedition," illustrates the reasons for allocution. Upon being asked after his conviction whether he wished to make a statement before receiving his sentence, Gandhi said (in part):

> "I believe that I have rendered a service to India and England by showing in non-co-operation the way out of the unnatural state in which both are living. In my humble opinion, non-co-operation with evil is as much a duty as is co-operation with good. But in the past, non-co-operation has been deliberately expressed in violence to the evildoer. I am endeavoring to show to my countrymen that violent non-co-operation only multiplies evil and that as evil can only be sustained by violence, withdrawal of support of evil requires complete abstention from violence. Nonviolence implies voluntary submission to the penalty for non-co-operation with evil. I am here, therefore, to invite and submit cheerfully to the highest penalty that can be inflicted upon me for what in law is a deliberate crime and what appears to me to be the highest duty of a citizen. The only course open to you, the judge, is either to resign your post, and thus dissociate yourself from evil if you feel that the law you are called upon to administer is an evil and that in reality I am innocent, or to inflict on me the severest penalty if you believe that the system and the law you are assisting to administer are good for the people of this country and that my activity is therefore injurious to the public weal."

The author reported the reaction of the judge to this speech as follows:

> "Passing sentence on Gandhi, his judge confessed, presented a problem of the utmost difficulty. Though Gandhi was evidently of a noble and even saintly character, quite different 'from any person I have ever tried or am likely to have to try,' it was his painful task, since the law is no respecter of persons, to consider him solely in the character of a criminal."

*Reprinted in* The Law as Literature 459, 465-66 (London ed 1960). Obviously this statement had the effect of a plea in mitigation. Furthermore, Gandhi had an opportunity to explain why he felt he had done nothing wrong. In most cases, and especially in the very common situation in which a defendant makes a plea of guilty, there is no other opportunity besides speaking before sentence for a defendant to express, in his or her own "halting eloquence," what sentence should be imposed and why.

"THE COURT: Proceed.

"[PETITIONER]: Your Honor, I did not say [the complaining witness] intended to commit fraud. [The government agency] wouldn't talk to her. She called to ask about things because she was used to having a lot of money and she wanted to keep us employed and be able to maintain the manner in which she lived.

"THE COURT: That's why you ran up $4,000 worth of jewelry bills?

"[PETITIONER]: She was with me.

"THE COURT: Personal items for yourself on credit cards for which you're not even — in this proceeding — going to be held responsible.

"[PETITIONER]: I should be held responsible for those. I took the responsibility.

"THE COURT: Too late, [petitioner].

"[PETITIONER]: She got involved in my wedding. In fact, she planned it; she took me shopping; I had it at her house.

"THE COURT: Uh-huh.

"[PETITIONER]: My husband was not with me when we got the rings.

"THE COURT: That's because she thought you were her friend when you were really one of her worst enemies.

"[PETITIONER]: She told me before I even got —

"THE COURT: That's enough. I don't want to listen to you anymore.

"You're going to the State Penitentiary. You're going five years on each of the three cases, with two-and-a-half-year minimums as recommended by the District Attorney's office."

We cannot tell from this record what petitioner would have said to the court, although we deduce that no matter what she had said the sentencing judge would have remained unpersuaded. The judge should not impatiently have jumped to judgment, especially a judgment that potentially would lock up petitioner for seven and one-half years in maximum security for committing a nonviolent property crime. There is no indication that the judge was interrupting

her statement because he found it irrelevant — rather it appears he stopped her because he was annoyed and disgusted.

In hindsight, petitioner should have attempted to make an "offer of proof" of what she was going to say to the court. The judge, however, cut off all further communication. He said in no uncertain terms, "I don't want to listen to you anymore." If she had attempted to say more, she might have been held in contempt by the obviously impatient judge.[3] Under these circumstances, petitioner can be excused for not making a more complete record. Petitioner was allowed only nine and one-half sentences to speak on her own behalf. Perhaps what she would have expressed would not have impressed the sentencing judge, but it might have influenced a parole board considering her sentence. Perhaps her words would have contained information vital with regard to a Parole Board decision to override the minimum sentences, ORS 144.110(2)(a), or when considering aggravating or mitigating circumstances, ORS 144.120(2).

We note the sentencing standards published by the American Bar Association.[4] ORS 137.122 was not in effect

---

[3] The reader should note that the post-conviction judge whose name appears on the title page was not the sentencing judge.

[4] *See, e.g.,* ABA standards for Criminal Sentencing 18-6.4, 18-6.6 (2d ed 1980), which provide in part:

Standard 18-6.4:

"(a) As soon as practicable after the determination of guilt and the examination of any presentence reports * * * a proceeding should be held at which the sentencing court should:

"* * * * *

"(ii) hear argument on the applicability of the various sentencing alternatives to the facts of the case;

"(iii) afford to the defendant his or her right of allocution * * *."

The commentary to this standard notes:

"Subparagraph (a)(ii) recognizes that the court should permit both parties to address the desirability of various sentencing alternatives (a position taken in standard 18-6.3(c) and (f)(iv)). Subparagraph (a)(iii) then requires that the court separately permit the defendant an opportunity to exercise the common law right of allocution."

Standard 18-6.6:

"(a) In addition to reaching the conclusions required as a prerequisite to imposition of the sentence selected, when sentence is imposed the court:

"* * * * *

"(ii) normally should state for the record in the presence of the defen-

when the trial judge imposed consecutive sentences without a word of explanation or reasoning. On remand, the sentencing

---

dant the reasons for selecting the particular sentence to be imposed. In the exceptional cases where the court deems it in the best interest of the defendant not to state fully in the defendant's presence the reasons for the sentence, the Court should prepare such a statement for inclusion in the record."

[5] ORS 137.122, passed in 1985, disallows the imposition of consecutive sentences unless certain specific findings are made. It reads as follows:

"(1) A term of imprisonment imposed by the court may be made concurrent or consecutive to any other term of imprisonment which has been previously imposed or is simultaneously imposed upon the same defendant. The court may provide for consecutive terms of imprisonment only in accordance with the provisions of this section. A term of imprisonment shall be deemed to be a concurrent term unless the court's order expressly provides for consecutive terms of imprisonment.

"(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a term of imprisonment which the defendant has not yet completed, the court may impose a term of imprisonment concurrent with or consecutive to the other sentence or sentences.

"(3) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (4) of this section.

"(4) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) The criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a substantial risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a substantial risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct.

"(5) When the court makes the findings provided in paragraph (a) or (b) of subsection (4) of this section, it may, in its discretion, impose a consecutive sentence for each criminal conviction arising out of a continuous and uninterrupted course of conduct for which such a finding has been made. The court may impose a consecutive sentence if the court finds that the actual term of incarceration would not otherwise be commensurate with the seriousness of the total course of defendant's criminal conduct or the public would not be adequately protected if a concurrent term of imprisonment were imposed.

"(6) Whenever the court imposes a consecutive sentence under this section, it shall state its reasons for doing so and make all required special findings on the record at the time of sentencing."

ORS 137.123 originally was adopted as Ballot Measure No. 10 in November 1986, with instructions that it be "added to and made a part of ORS [Chapter] 137." Or Laws 1987, ch 2, § 12. It has nearly identical language, which disallows the issuance of

court will have the opportunity to consider those standards and to apply the current statute, as we hold that the sentencing judge violated petitioner's state constitutional right to be heard when he summarily stopped her from saying anything further at her sentencing hearing.

The decision of the Court of Appeals is reversed. The judgment of the post-conviction court is reversed, and the case is remanded to that court for further proceedings.[6]

---

consecutive sentences unless similar findings are made:

"(1) A sentence imposed by the court may be made concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed upon the same defendant. The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the court's order expressly provides for consecutive sentences.

"(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.

"(3) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (4).

"(4) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury, or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course or [sic] conduct."

Both statutes inform a sentencer that the court "may provide for consecutive [terms of imprisonment, ORS 137.122(1)] [sentences, ORS 137.123(1)] only in accordance with the terms of *this section*." (Emphasis added.)

Neither statute was in effect on March 26, 1985, the date that petitioner originally was sentenced, so the sentencing court did not violate any statute by failing to make the required findings. Nonetheless, if on resentencing the court desires to impose consecutive sentences, it must follow the 1987 statute. Because the 1987 statute's requirement that consecutive sentences be imposed only in accordance with "this section" is clearly inconsistent with the 1985 statute's identical requirement, it must be taken impliedly to repeal the requirements of the 1985 statute. *State v. Shumway,* 291 Or 153, 630 P2d 796 (1981).

[6] ORS 138.520 gives a post-conviction court the authority to grant relief, including "modification of sentence."