Argued and submitted September 29, 2000, remanded for resentencing; otherwise affirmed February 28, 2001

STATE OF OREGON,
*Respondent,*

*v.*

GARY SOUTHARDS,
*Appellant.*

(98038674C; CA A102670)

21 P3d 123

James N. Varner, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Kaye Ellen McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from a 25-month sentence, imposed consecutive to another sentence, following a conviction for escape in the second degree. ORS 162.155. He asserts that he was denied his right to be heard as to the sentence by the sentencing court, in violation of Article I, section 11, of the Oregon Constitution. We remand for resentencing.

Defendant committed an unauthorized departure from his alternative confinement program and was charged in this case with escape. After his escape, defendant visited a motel where he allegedly assaulted his girlfriend and a man who tried to intervene in the assault of the girlfriend. He was ultimately apprehended by the police at the motel. Defendant was charged with two counts of assault. The assault charges were tried separately from the escape charge. Defendant was convicted of one count of assault after a jury trial with Judge Yraguen presiding. Sentencing in the assault case was postponed. Then, defendant went to trial on the escape charge on May 15 before the trial court in this appeal and was convicted. The trial court asked defendant after the verdict whether he wanted to proceed directly to sentencing or to wait the statutory period of 48 hours before sentence was imposed. The record indicates that the trial court believed at that time that it would impose sentence on the assault and escape convictions in the same hearing.

Defendant responded that he did not have a preference as to waiting for 48 hours to elapse, and the trial court asked for his comments on what sentence should be imposed. Defendant, defense counsel, and the prosecutor then engaged with the court in a discussion in which defendant responded to the court's questions and expressed his views on various subjects pertinent to sentencing. The court then decided to postpone sentencing because the assault conviction implicated a mandatory minimum sentence. Because the court was contemplating a sentence on the escape conviction concurrent to the sentence on the assault conviction, the court thought it prudent to have sentencing occur first on the assault conviction.

As it turned out, Judge Yraguen imposed the sentence on the assault conviction on June 2. Defendant was sentenced for two probation violations in other cases at that time, as well. During the hearing, defendant engaged in threatening behavior and verbal altercations with Judge Yraguen. As a result, he was held in contempt on three different occasions and received sentences of 30 days each on those contempt counts. He also received a mandatory minimum sentence of 70 months on the assault conviction.

Defendant was sentenced in this case later on the same day by Judge Valentine. The court was sitting in another county, and the hearing was conducted by telephone. At the beginning of the hearing, the prosecutor offered to play a tape recording of defendant's threats and verbal outbursts before Judge Yraguen, in an effort to persuade the trial court that the sentence for escape should not be imposed concurrent to the sentence for the assault. Defendant's counsel objected, arguing that the tape was irrelevant and that concurrent sentencing was appropriate, regardless of defendant's behavior, and because the underlying crimes were part of a "single episode of misconduct." The court made a specific finding that the escape and assault incidents were separate and discrete incidents. It then said that it would hear the tape.

After the tape was played, the court addressed defendant and expressed disappointment at his conduct. The following colloquy then occurred:

"Defense Counsel:   Can we be heard, Judge?

"The Court:   No. I'm going to impose sentence. I am imposing a presumptive sentence of 25 to 30 months. I will give it frankly on the low side because I hate to waste tax payer money on locking you up further but by the same token[,] you have not demonstrated the kind of attitude that is going to allow you at this point in time to get back easily into real life society[,] so you'll serve 25 months in prison. I'm not going to find, although I could find, compelling reasons to not allow good time or work time. I'm going to let your attitude in prison determine whether or not you get any of that 25 month sentence reduced[,] so you hold your fate in your hands as to whether or not you will serve a full

25 months or not. You'll do 24 months post-prison supervision[,] and this will run consecutive to [the assault case]. You do have the right to appeal both my finding you guilty on the charge of Escape[,] as well as to appeal the sentence itself. You'll only * * *

"Defense Counsel: Judge * * *.

"The Court: * * * have 30 days to appeal. If you want to appeal you should see a lawyer. [Defense counsel]?

"Defense Counsel: We were not hear[d] prior to your' determining whether or not the matter was going to be run consecutively[,] and I would like to be heard on that even if it is kind of late.

"The Court: [Defense Counsel], thank you. I've heard enough for the record and I'm going to close the record at this point in time. Let me know please what I need to do with your various documents you've sent me. I see I have a sentence order here as well as a criminal history. Maybe have Ms. Barton call me in about an hour after I get back from a luncheon meeting.

"Prosecutor: We'll give Ms. Barton a copy of the filled-out judgment order to send to you, Judge.

"The Court: Thank you very much.

"Prosecutor: Thank you, Judge."

At this point, the court apparently hung up the phone. Then the following occurred:

"Defense Counsel: I want to object on the record, Judge, to not being allowed to be heard on this matter prior to your incrimination [*sic*].

"Prosecutor: You might as well make your record.

"Defense Counsel: Well, I guess the Judge has already hung up but I wanted to object on the record to the fact that we were not allowed to be heard prior to the determination as to whether it was not to be run consecutive or not[,] and I don't want to put down the basis without the Judge being available. But I just want to object to that.

"Prosecutor: Okay, well[,] the Court Reporter is taking it down if you want to lay any kind of basis on so you preserve it for appeal. I don't have any objections.

"Defense Counsel:    I'll go ahead and do that. [Defendant] has actually been in jail since February 7, 1998. He was denied credit for time served when he was sentenced to consecutive terms based upon misdemeanors and Assault II so in effect he is going to be doing 74 months in prison already. In terms of the contempts being the basis for not going concurrent with this, the Judge has already sentenced him to 30 additional days on each of the contempts[,] so we believe that the running of the sentences consecutively now based upon that is in effect a form of double jeopardy and that he's punishing twice for the same offense that he's already received 90 days for. And perhaps[,] we can have the Judge receive a copy of this record so that he has that[,] and if he wishes to reconsider to do that prior to our filing of our notice of appeal which we'll be doing very soon. Thank you."

Defendant argues on appeal that the court erred in denying his request to be heard through counsel and personally after the trial court listened to the tape. He contends that the holding in *DeAngelo v. Schiedler,* 306 Or 91, 94, 757 P2d 1355 (1988), is controlling. The state responds that defendant's assignment of error is not preserved. Also, it argues that defendant's right to be heard personally (the right of allocution) and his right to be heard through counsel, protected by Article I, section 11, were furnished by the trial court because both defendant and defense counsel were given the opportunity to be heard at the close of the trial. Thus, it concludes that the requirements of Article I, section 11, were met.

■    Article I, section 11, provides, in relevant part, "In all criminal prosecutions, the accused shall have the right to * * * be heard by himself and counsel[.]" Under section 11, a defendant has the right of allocution before the imposition of sentence, *State ex rel Russell v. Jones,* 293 Or 312, 315, 647 P2d 904 (1982). That right includes the "opportunity to attempt to convince the sentencing court to impose no more than the minimum, as well as to address other sentencing matters that may be involved, such as the imposition of a fine." *State ex rel Huddleston v. Sawyer,* 324 Or 597, 612, 932 P2d 1145, *cert den* 522 US 994 (1997). "The wording of Article I, section 11, supports [the] view that [a defendant] may present argument without taking the stand, similar to the way in which his counsel may make an unsworn closing statement

to the factfinder." *State v. Rogers*, 330 Or 282, 297, 4 P3d 1261 (2000).

■      In *DeAngelo*, the court explained that "the right to speak at a sentencing hearing should logically include the right to make any statements relevant to existing sentencing and parole practices." 306 Or at 95. Because of Oregon's criminal sentencing structure, a defendant should be allowed to inform the judge of "criminal history, the crime severity, and aggravating and mitigating matters." *Id.* The court agreed with the statement of the Arizona court in *State v. Allie*, 147 Ariz 320, 710 P2d 430 (1985), that

> "a defendant should be able to state any reason why he or she feels sentence should not be pronounced and, in addition to presenting mitigating evidence, be given an opportunity to make any relevant personal comments to the court. This includes, but is not limited to, statements of remorse, apology, chagrin, or plans and hopes for the future."[1] *DeAngelo*, 306 Or at 95-96.

With that understanding of the law, we turn to the arguments in this case. The state first argues on appeal that, "[d]efendant failed adequately to preserve a claim that the trial court denied him the right of allocution. At no point did defense counsel suggest that defendant wanted to address the court personally concerning his sentence." ORAP 5.45. The answer to that argument is that after the initial sentencing hearing was continued and the trial court received new sentencing information, defendant was not furnished the opportunity to address the court to say anything at all. Although defendant's offer of proof did not include a personal statement from defendant, defense counsel requested at the second hearing, "[c]an *we* be heard, Judge." (Emphasis added.) This case differs from *State v. Fern*, 110 Or App 185, 822 P2d 1210 (1991), in which we rejected the argument that the defendant had been denied his right to allocution when

---

[1] In *Rogers*, 330 Or at 305, the court reiterated that a defendant has a right to address the decision-maker, whether that is judge or jury, on the issue of leniency.

"When the Oregon Constitution was adopted, the permissible scope of a criminal defendant's unsworn presentencing statement included legal reasons why the court should not impose a potential sentence, general pleas for leniency, mitigating factors and requests for pardon." *Id.* at 305.

he made no objection whatsoever. Here, defense counsel notified the trial court that both he and defendant wished to speak by using the word "we." As importantly, the requirement of preservation of error for purposes of appeal necessarily assumes that a party has had an opportunity to address the trial court. *DeAngelo*, 306 Or at 98 (holding that the petitioner was excused from making a record of what she would have said when the trial court cut off all further communications in no uncertain terms). Here, defense counsel tried to assert defendant's Article I, section 11, rights, but the trial court declined to hear from him.

■ Next, the state argues that defendant was not deprived of his Article I, section 11, rights because the court heard from defendant and defense counsel at the first hearing, and it therefore considered defendant's criminal history, his personal statements, and other matters pertinent to sentencing before the imposition of sentence. However, it is clear from the record that the court *changed* its predisposition about concurrent sentences after hearing the tape.

At the first hearing and before the defendant engaged in the threatening conduct toward Judge Yraguen, the court said:

> "Whatever time I'm going to impose[,] it's going to be concurrent with what you were convicted of. In other words, you're not going to get any additional time. I'm fair[,] and I'm a cheapskate, okay? And I'm not going to waste tax payer money to lock you up any longer than you're going to be locked up on a Measure 11 crime. * * * I'm not going to run the sentence on this escape charge consecutively. To put it another way[,] it will run concurrent."

At the second hearing, the court said, before hearing the tape, that it had

> "resolved to talk to [defendant] in May about it [being] the time to change an attitude, time to change conduct, and [the court] felt then that if in fact [defendant] had learned a lesson that * * * seventy months in jail was a substantial lesson. But if in fact[,] he's now threatening Judges, [the court is] very concerned about that attitude as being indicative of an unwillingness to change."

After hearing the tape, the court said:

"It's obvious that the words I spoke two weeks ago didn't have any impact on your attitude when you came in front of Judge Yraguen this morning. You were not really rude. You were threatening. It demonstrates to me an unwillingness to begin the process of change that can make you a productive individual."

In *DeAngelo,* the trial court cut the defendant's personal statement off before imposing sentence, saying, "[t]hat's enough, I don't want to listen to you anymore." *DeAngelo,* 306 Or at 97. The Supreme Court observed that the trial court's interruption did not occur because it found the statements irrelevant, but because it was "annoyed and disgusted." *DeAngelo,* 306 Or at 98. The Supreme Court observed:

"Perhaps what [the defendant] would have expressed would not have impressed the sentencing judge, but it might have influenced a parole board considering her sentence. Perhaps her words would have contained information vital with regard to a parole board decision to override the minimum sentence, ORS 144.110(2)(e) or when considering aggravating or mitigating circumstances. ORS 144.120(2)." *Id.*

The *DeAngelo* court then concluded that the sentencing court violated the defendant's Article I, section 11, right to be heard when it summarily stopped her from saying anything further at her sentencing hearing.

Similarly here, defendant was cut off after requesting to be heard by the sentencing court as to his sentence. The trial court proceeded to impose sentence on him without permitting either defense counsel or defendant to comment on the new information before the court. Clearly, that information was germane to the trial court's decision about whether to make the sentence on the escape conviction concurrent or consecutive to the assault conviction. Consequently, we hold that the opportunity presented to defendant and his counsel at the initial hearing to address the issue of what sentence should be imposed did not satisfy his rights under Article I, section 11.

■ Finally, the state argues that any error by the trial court is harmless. The state's brief explains:

"From defense counsel's statement on the record after the court hung up the phone, it appears that he planned to provide the judge with 'a copy of this record so that he has that and if he wishes to reconsider to do that prior to our filing of our notice of appeal,' he could do so. * * * It is significant that defendant does not now challenge his sentence on either of the bases he made in his offer of proof. Given that the trial court considered the relevant statutory criteria and defendant's statements before imposing sentence, and given that defendant has waived those contentions that he says he wanted to present to the court, there is no basis for remanding this case for resentencing."

We understand the state to make two arguments as to why the denial of defendant's section 11 rights was harmless. First, the state argues that the trial court had the opportunity to consider defendant's position because the trial court considered and rejected defendant's argument that the threats were irrelevant when it overruled defendant's objection to the tape and because defendant made an offer of proof after the sentencing hearing. The argument made by defense counsel regarding the relevance of the tape's information to the sentencing process did not necessarily encompass all of the mitigating factors that defendant might have wished to present for the court's consideration in light of the tape. Also, nothing in the record before us demonstrates that the court reconsidered its sentence in light of the offer of proof. The imposition of consecutive sentences in this case was discretionary, see ORS 137.123. The court was still weighing whether to impose consecutive or concurrent sentences when it made a finding that the escape and assault were separate incidents and when it decided to listen to the tape. There is no way to know whether the court would have imposed a consecutive sentence or whether the court would have been persuaded to depart from the presumptive sentence, had it heard from defendant and his counsel after hearing the tape.

Second, the state contends that defendant waived the issues that he wanted the trial court to consider by not appealing the sentence on the substantive grounds raised in his offer of proof. We are unaware of any rule of law, and the state argues none to us, that would hold that the abandonment of a substantive challenge to a sentence on appeal operates to waive a procedural challenge on appeal. The grounds

are independent of each other, and defendant's Article I, section 11, rights are discrete from any other claim of error, such as double jeopardy. Defendant's challenge on this appeal is aimed solely at the court's exercise of discretion in deciding whether to impose a presumptive and consecutive sentence. Article I, section 11, guarantees him the right of allocution and the right to be heard through counsel concerning those decisions, rights that he was denied under the facts of this case.

Remanded for resentencing; otherwise affirmed.