Argued and submitted May 26, sentence vacated; remanded for resentencing; otherwise affirmed December 29, 2004

STATE OF OREGON,
*Respondent,*

*v.*

ANTOINE RAMONE KENNEDY,
*Appellant.*

C9106-32962; A117940

103 P3d 660

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Executive Director.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals an amended judgment imposing a sentence for murder, arguing that the trial court erred in increasing his post-prison supervision (PPS) term from 36 months to life. Reviewing for errors of law, ORS 138.220; *State v. Gibson*, 183 Or App 25, 51 P3d 619 (2002), we vacate the sentence and remand for resentencing.

The relevant facts are not disputed. In January 1991, when he was 16 years old, defendant committed murder and attempted murder. In June 1991, after being waived from juvenile court to circuit court under *former* ORS 419.533 (1989), *renumbered as* ORS 419C.349 (1993), and pleading no contest, defendant was convicted of those crimes. ORS 163.115; ORS 161.405. On the murder conviction, the trial court sentenced defendant to an incarceration term of "LIFE (160 months, pursuant to Guidelines)" and to a 36-month PPS term. In January 2002, *nunc pro tunc* June 1991, the trial court entered an amended judgment in which, as noted, it increased defendant's PPS term to life, as provided in *former* OAR 253-05-004(1) (1989).[1] Defendant was not present during the January 2002 proceeding.

■      On appeal, defendant first argues that the trial court erred in amending the judgment outside his presence. According to defendant, the right to be present at sentencing is guaranteed both by ORS 137.030 and by Article I, section 11, of the Oregon Constitution.[2] Defendant acknowledges

---

[1] *Former* OAR 253-04-005(1) (1989) provided:

"The term of post-prison supervision for an offender serving a life sentence pursuant to ORS 163.105 or 163.115 shall be for the remainder of the offender's life, unless the Board [of Parole and Post-Prison Supervision] finds a shorter term appropriate. In no case shall the term of supervision be less than three years."

*Former* OAR chapter 253 has been renumbered as OAR chapter 213.

[2] ORS 137.030 provides, in part:

"(1) For purposes of giving judgment, if the conviction is for a felony, the defendant shall be personally present * * *.

"(2) As used in this section, 'personally present' means that a defendant:

"(a) Is physically present before the court; or

"(b) Is imprisoned and does not object to appearing before the court by means of simultaneous television transmission allowing the court to observe

that a trial court may amend a criminal judgment outside a defendant's presence if the amendment is merely a nondiscretionary administrative change to which the defendant cannot object, that is, one that is required by law. He argues, however, that the amendment in this case constituted a substantive change to his sentence to which he could have objected on several grounds, including the ground that his plea agreement arguably was conditioned in part on a 36-month PPS term and the ground that the amendment fails to specify that the Board of Parole and Post-Prison Supervision (board) is authorized to shorten the life PPS term. *See former* OAR 253-05-004(1) (PPS term for the offender serving a life sentence under ORS 163.115 "shall be for the remainder of the offender's life, unless the [b]oard finds a shorter term appropriate"). Defendant also argues that, even assuming that the trial court correctly applied *former* OAR 253-05-004(1) to him and that the court was not required to specify the board's role in that regard, he nevertheless was entitled to be present and to be heard because his statements at the time might affect the board's later decision whether to shorten his PPS term. Finally, defendant argues that a life PPS term constitutes a mandatory minimum sentence within the meaning of ORS 161.620 (1989), *amended by* Or Laws 1993, ch 33, § 306, providing that a sentence imposed on a person remanded from juvenile court "shall not include * * * any mandatory minimum sentence." He argues that, consistently with that statute, he is not subject to a life PPS term.

The state responds that, under ORS 137.030 and Article I, section 11, as applied in *State v. DeCamp*, 158 Or App 238, 242, 973 P2d 922 (1999), defendant was entitled to be present at his amended sentencing proceeding only if the amendment was substantive. Here, the state argues, the amendment was administrative because it merely brought the sentence into conformity with a "mandatory requirement of law," namely, *former* OAR 253-05-004(1). According to the state, that rule provided the trial court with no discretion as

and communicate with the defendant and the defendant to observe and communicate with the court."

Article I, section 11, provides that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

to the length of defendant's PPS term; to the contrary, under the rule, defendant's original 36-month PPS term was invalid and the trial court had a duty to correct it. The state also disputes whether defendant had a basis to object to imposition of a life PPS term; it argues that there is no evidence in the record in this case that he originally negotiated for a 36-month term. The state also argues that any possible effect his statements may have on the board's decision whether to shorten his PPS term is irrelevant to the questions whether the increase in the term was substantive or administrative and whether he had a right to be present at the amended sentencing proceeding. As to whether ORS 161.620 (1989) precluded the imposition of a life PPS term, the state reasons that the statute was enacted in 1985, that PPS terms did not exist at that time, and that, accordingly, the term "sentence" in ORS 161.620 (1989) necessarily referred only to incarceration terms and not to PPS terms. The state reasons that minimum PPS terms therefore are not precluded by ORS 161.620 (1989).

■■ Because it may obviate the need to address defendant's other assignments of error, we first consider whether, as a matter of law, ORS 161.620 (1989) precluded the imposition of a life PPS term. That issue poses a question of statutory construction that we answer according to the interpretive method set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text of the statute in context and then, if necessary, consider the legislative history of the statute and applicable maxims of statutory construction.

ORS 161.620 (1989) provided:

"Notwithstanding any other provision of law, a sentence imposed upon any person remanded from the juvenile court under [*former*] ORS 419.533 [(1989)] shall not include any sentence of death or life imprisonment without the possibility of release or parole nor imposition of any mandatory minimum sentence except that a mandatory minimum sentence under ORS 163.105(1)(c) [(1989)] shall be imposed where the person was 17 years of age at the time of the offense."

The statute did not define the term "mandatory minimum sentence." In prohibiting the imposition of such sentences, however, it made an express exception for one particular type of mandatory minimum sentence, namely, the one provided in ORS 163.105(1)(c) (1989). Under the latter provision, when a person was convicted of aggravated murder and sentenced to life imprisonment with the possibility of parole, the sentencing court was required to order that the person "be confined for a minimum of 30 years without possibility of parole[.]"[3]

The fact that the legislature understood the sentence established in ORS 163.105(1)(c) (1989) to be a "mandatory minimum sentence" for the purpose of ORS 161.620 (1989) suggests that such a sentence has three features: (1) that the sentencing court is required to impose it; (2) that it has a specified duration, less than which the court may not impose; and (3) that it involves "confine[ment]" of the person, that is, incarceration or imprisonment. *See Webster's Third New Int'l Dictionary* 1373, 1438 (unabridged ed 2002) (defining the adjective "mandatory" in part as "obligatory" and defining the noun "minimum" in part as "the least quantity assignable, admissible, or possible in a given case" and as "the lowest * * * amount").

Our understanding of ORS 161.620 (1989) is consistent with the Supreme Court's decision in *State v. Jones*, 315 Or 225, 844 P2d 188 (1992). As pertinent here, in that case, the defendant was a remanded juvenile who had been convicted of murder and sentenced to life in prison with a 10-year minimum prison term, as required by ORS 163.115(3) (1989). *Id.* at 227. On appeal, the defendant argued that ORS 161.620 (1989) prohibited the imposition of the 10-year minimum prison term. The court determined that neither the text nor the legislative history of ORS 161.620 (1989) disclosed the intended meaning of the term "mandatory minimum sentence."[4] It therefore considered the

---

[3] The original version of ORS 161.620, which was enacted in 1985, also contained the exception for aggravated murder sentences of life imprisonment with a minimum of 30 years without possibility of parole. Or Laws 1985, ch 631, § 9.

[4] We also have not found the legislative history of either the 1985 or the 1989 version of ORS 161.620 helpful in regard to the issue presented here.

"general purpose" of the statute. The court concluded that, consistently with the purpose of giving trial courts "flexibility" in sentencing remanded juveniles, "a 'minimum sentence' is 'mandatory' if it gives the sentencing judge no flexibility, but requires the judge statutorily to impose a specified minimum sentence." *Id.* at 229-30.

The court noted that it made no difference that, under the applicable version of ORS 163.115, the board was authorized to set aside the 10-year minimum; the court emphasized that the prohibition in ORS 161.620 (1989) was directed at the *imposition* of the sentence and "thus focuses on the options available to the sentencing judge." 315 Or at 231. Concluding that a 10-year prison term under ORS 163.115(3) (1989) was such a sentence and that the trial court therefore was prohibited by ORS 161.620 (1989) from imposing it, the court vacated the sentence and remanded the case to the trial court for resentencing. *Id.* at 231-32.

Thus, the *Jones* court expressly determined (1) that a sentence is "mandatory" if it is statutorily required and (2) that the sentence required under ORS 163.115(3) (1989) met that criterion. In addition, the court implicitly held that the 10-year prison term under ORS 163.115(3) (1989) also constituted both a "minimum" and a "sentence" for the purpose of ORS 161.620 (1989).

Our interpretation of the 1989 version of ORS 161.620 also makes sense in light of the circumstances surrounding the original enactment of the statute in 1985. *See PGE*, 317 Or at 611 (context includes previous versions of a statute); *State v. Brooks*, 187 Or App 388, 67 P3d 426 (2003) (same). ORS 161.620 (1985) was enacted as part of Senate Bill 414, in other portions of which the legislature lowered the age at which juveniles could be remanded to adult court from 16 to 15; established more detailed criteria for such remand; and provided for the initial placement of convicted juveniles in juvenile facilities. Or Laws 1985, ch 631. At that time, the legislature would have understood the term "sentence" to mean the indeterminate terms of imprisonment for various classes of felonies and misdemeanors described and set out in ORS 137.120(2) (1985), ORS 161.605, and ORS 161.615; and various specific statutorily required prison

terms, such as the one established in ORS 161.610 for the use of firearms during the commission of felonies and those established in ORS 163.105 and ORS 163.115 for aggravated murder and murder, respectively. Conversely, in 1985, probation—a nonincarcerative form of punishment—was not regarded as a "sentence." *See State v. McClure*, 295 Or 732, 736, 670 P2d 1009 (1983); *see also State v. Meyer*, 183 Or App 536, 546, 53 P3d 940 (2002) (in enacting statutes, legislators "are deemed to be aware of existing law"). Accordingly, the circumstances surrounding the original enactment of ORS 161.620 suggest that, in proscribing the imposition of mandatory minimum "sentences," the 1985 legislature intended to proscribe the imposition of mandatory minimum terms of imprisonment.

Here, the parties do not dispute that, ordinarily, a life PPS term is mandatory. In addition, a term of life PPS arguably also constitutes a "minimum"; although it does not consist of a specified number of years, no lesser sentence may be imposed. A life PPS sentence, however, does not meet the third criterion for "mandatory minimum sentences" under ORS 161.620 because it does not consist of confinement or imprisonment. It follows that the trial court was not precluded by reason of ORS 161.620 (1989) from sentencing defendant to a PPS term of life.

We return, then, to defendant's argument that the trial court violated his rights under ORS 137.030 and Article I, section 11, by amending the judgment when he was not personally present. We begin by examining the Supreme Court's and this court's precedents applying those provisions.[5]

In *DeAngelo v. Schiedler*, 306 Or 91, 94-96, 757 P2d 1355 (1988), the trial court allowed the offender to speak at her sentencing proceeding but cut her off after several minutes. *Id.* at 96-98. She eventually sought post-conviction relief on the ground that the trial court's action violated her right to be heard under Article I, section 11. The Supreme

---

[5] Both defendant and the state assume that the analyses under the statute and the constitutional provision are the same. We do likewise.

Court explained that a defendant's rights under that constitutional provision apply in the sentencing phase of a criminal proceeding and include the right to make "statements relevant to existing sentencing and parole practices," such as reasons why sentence should not be pronounced, evidence in mitigation of sentence, and any relevant personal comments. *Id.* at 95-96. The Supreme Court concluded that the trial court erred in cutting off the offender's statements because, even if additional statements "would not have impressed the sentencing judge," they might have "influenced a parole board considering her sentence." *Id.* at 98.

The court applied the same principles from a very different perspective in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den*, 522 US 994 (1997). In that case, the sentencing court declined to impose a sentence under ORS 137.700 on an offender convicted of a crime subject to that statute. The state sought a writ of mandamus compelling the court to do so. Among the issues the Supreme Court considered was whether imposition of a mandatory minimum sentence under ORS 137.700 violates an offender's right to be heard under Article I, section 11. *Id.* at 611. The Supreme Court explained that, consistently with *DeAngelo*, the right to speak at sentencing amounts to a right to a meaningful opportunity to seek mitigation of a sentence. The court added, however, that the right

"does not carry with it a right to have the sentencing court *necessarily* be able to reduce a sentence that otherwise applies. Rather, in *DeAngelo*, this court noted that the right 'should logically include the right to make any statements relevant to *existing sentencing* and parole *practices*.' 306 Or at 95 (emphasis added). That is not the same as a right to alter or to abate existing sentencing practices."

*Id.* (emphasis in *Huddleston*; footnote omitted).

The court also reasoned that the right to be heard is "not meaningless" in the case of a mandatory minimum sentence like the one at issue in that case because, in such a case, the trial court could impose a sentence that is longer than the minimum. The right to be heard therefore "gives a defendant an opportunity to attempt to convince the sentencing court to impose no more than the minimum, as well as to address

other sentencing matters that may be involved, such as the imposition of a fine." *Id.* at 611-12.

This court also has considered the contours of the right to be heard at sentencing. In *DeCamp*, we noted that the right extends to sentence modification proceedings if the modification is "substantive" as opposed to "administrative." 158 Or App at 242. We compared *State v. Blake*, 7 Or App 307, 311, 490 P2d 1026 (1971), in which we concluded that a trial court's exercise of its discretion in ordering that previously imposed sentences be served consecutively, rather than concurrently, constituted a substantive modification, with *State v. Kliment*, 45 Or App 511, 514-15, 608 P2d 618 (1980), in which we concluded that a modification providing that a sentence run consecutively with a federal sentence, as required by law, was an administrative change only. *Id.* Taking guidance from those cases, we deemed the modification at issue in *DeCamp*—in which the trial court increased the defendant's sentence on a crime from one month to six months—to be substantive. *Id.; see also State v. Riley*, 195 Or App 377, 383-84, 97 P3d 1269 (2004) (modification of judgment to add required term under repeat offender statute, ORS 137.635, occurred "entirely by operation of law"; the defendant's absence therefore was not "prejudicial"); *State v. Massie*, 188 Or App 41, 69 P3d 1236 (2003) (vacating order of restitution on ground that the defendant was absent from restitution hearing and had not waived his right to be present); *Gibson*, 183 Or App at 32 (concluding that a modification in which the trial court changed the defendant's crime of conviction was substantive).

This case, which also involves an increase in a sentence, is superficially like *DeCamp*. It is significant, however, that, in *DeCamp*, neither the original nor the modified sentence was required by statute. Instead, each was a discretionary departure from the presumptive sentence of probation. Under those circumstances, the defendant had an interest in presenting evidence in mitigation of the court's decision to depart.

Here, by contrast, the life PPS term was statutorily required. Accordingly, as the court explained in *Huddleston*,

defendant had no cognizable interest in attempting to persuade the sentencing court not to impose that sentence. Moreover, because a court logically cannot impose a PPS term of a longer duration than a life term, defendant had no interest in addressing the court in that regard. *See Huddleston*, 324 Or at 611-12. In short, defendant had no cognizable interest in an opportunity to make statements "relevant to existing sentencing * * * practices." *DeAngelo*, 306 Or at 95.

The question remains whether defendant had a right to be heard regarding the other interest recognized by the Supreme Court under Article I, section 11, namely, his interest in making statements for the purpose of seeking to influence the relevant release authority. *See DeAngelo*, 306 Or at 95 (recognizing right to make statements "relevant to existing * * * parole practices"). In *DeAngelo*, that interest pertained to the defendant's interest in influencing the release authority then known as the Parole Board regarding its establishment, on or soon after the defendant's commencement of service of her indeterminate sentence, of the length of her actual prison term. By contrast, under the sentencing guidelines sentencing scheme, the board has no function relating to the length of an offender's term of imprisonment. Nor, in regard to most crimes, does the board have any function relating to the *length* of a PPS term; rather, the board's role in regard to the PPS term imposed for most crimes pertains only to the *service* of the term. *See, e.g.,* ORS 144.098 (providing for board review and approval of proposed PPS release plan); ORS 144.101 (providing for board authority to sanction violations of conditions of PPS); ORS 144.102 (providing for board authority to specify and modify conditions of PPS).

Here, however, defendant was convicted of murder. As the parties acknowledge, the board's role in regard to a PPS term imposed for the crime of murder includes the authority to *decrease* a PPS term from life to some lesser amount, although not less than 36 months. *See former* OAR 253-05-004(1); *see also Gaynor v. Board of Parole*, 165 Or App 609, 614, 996 P2d 1020 (2000) (although imposition of life PPS term is solely within authority of sentencing court, board may shorten the term). We conclude that that function,

like the board's authority under the indeterminate sentencing scheme to determine the length of a person's actual prison term, *see DeCamp*, implicates the right to be heard at sentencing to such a life term. Stated another way, defendant was entitled to an opportunity to make statements relevant to the board's existing practices concerning the shortening of life PPS terms for murder. It follows that the trial court erred in modifying defendant's PPS term outside defendant's presence.

Sentence vacated; remanded for resentencing; otherwise affirmed.