Argued and submitted April 20, Summit High School, Bend; affirmed
November 16, 2005

In the Matter of
Michael Adam Leach, a Youth.

STATE ex rel JUVENILE DEPARTMENT OF
UMATILLA COUNTY,
*Respondent,*

*v.*

Michael Adam LEACH,
*Appellant.*

JV000144; A123882

123 P3d 347

Michael A. Breiling argued the cause and filed the briefs
for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Sullivan, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

■ Having found that youth violated a term of his probation, the trial court committed him to the custody of the Oregon Youth Authority (OYA) for placement at a youth correctional facility. On appeal, youth argues that we must remand for a new disposition[1] because the trial court violated his right to be present at the dispositional proceeding and to allocute under Article I, section 11, of the Oregon Constitution. Because those rights do not apply at the dispositional phase of juvenile proceedings, we affirm.

In October 2003, youth was found to be within the jurisdiction of the Umatilla County Circuit Court for having committed an act that, had he been an adult, would have been a violation of ORS 163.427, sexual abuse in the first degree. As a disposition, the court imposed, among other things, a term of probation. In early 2004, youth was brought before the court and accused of violating his probation. At that hearing, the state's evidence included two letters from youth's treatment provider. Because the provider was not present, the court indicated its intention to continue the hearing. Youth's attorney objected on the ground that the state had rested. The court sustained the objection and announced that, based on the content of the letters, it found youth to be in violation of the condition of his probation requiring him to cooperate in treatment. The court announced, "I am revoking his probation and placing him with the Oregon Youth Authority for an appropriate placement. Thank you."

■ The transcript of the hearing then indicates "(Off record)" and resumes with what the context reveals to be a three-party telephone conversation between the court, the prosecuting attorney, and youth's counsel. The court and the prosecuting attorney are together in the judge's chambers;

---

[1] Although youth refers to the outcome of his case as a "sentence," that is not the proper term in a juvenile proceeding. Juveniles receive a disposition, not a sentence. *State ex rel Juv. Dept. v. Fitch*, 192 Or App 56, 64, 84 P3d 190, *rev den*, 337 Or 282 (2004).

youth's counsel is in his automobile. Youth is elsewhere, presumably in transit to an OYA facility for confinement. The conversation is as follows:

"THE COURT: I've got [the prosecutor] here, and we're back on the record with the Michael Leach case. The situation, [defense counsel], I realize, is, in essence, sustaining your objection to continuing the Leach hearing, and going ahead and making my ruling based on the treatment provider's letter, I failed to give you an opportunity to allocute, as the expression goes, in other words, to give a closing argument.

"And what has happened is I have gone ahead and instructed Bill Jones, the Trial Court Administrator, to — well, I didn't so much instruct him to halt the transport of your client all the way to Salem, but, at the moment, they're going to drop him off at your car at The Dalles and await further instructions from the Court.

"I apologize for not giving you the opportunity to speak, make a closing argument on your client's behalf, but I think that does put a potential defect in the hearing.

"I'm not sure if you want to make any decisions right now whether or not to waive the closing argument, or whether you want a further hearing, so I will defer to your wishes on that issue.

"[DEFENSE COUNSEL]: Well, Your Honor, I find that closing arguments are much more persuasive with jurors than with Judges. The Judges seem much more familiar with the facts and laws, and how to find them.

"I really don't believe that it would have — or, at this point, I would need to make a closing argument. I just think the record speaks for itself, and that no further arguments are really going to change the position, I don't believe.

"THE COURT: Well, I do think, certainly, the statements and facts that the treatment provider had in Exhibits 1 and 2 are pretty definitive and are pretty stark, so to speak, in terms of your client's case, but I do wish to note, you didn't have much breathing room, so to speak, between my earlier statements about wanting to expand the hearing and then my decision, and I think your objection was potentially well taken, but the record was the record at about 12:50 in the afternoon.

"* * * * *

"So, based on your waiver, then, of the closing argument, I will not reopen the case, and we'll get word to the transport that they can continue to take your client on down to Salem.

"And, again, I want to confirm that I've stated your position correctly.

"[DEFENSE COUNSEL]: I believe you have, Your Honor."

At no time in the courtroom or during the telephone conversation did the court ask whether youth wanted to allocute, nor did youth or his counsel request that right. Youth now contends that he was denied his right to be present and his right to allocute during the dispositional phase of the proceedings.[2]

A criminal defendant has a right under Article I, section 11, of the Oregon Constitution[3] to be present at the entire trial, including sentencing, and to speak before sentencing. Or Const, Art I, § 11; *DeAngelo v. Schiedler*, 306 Or 91, 94, 757 P2d 1355 (1988); *State v. DeCamp*, 158 Or App 238, 242, 973 P2d 922 (1999). Whether youth prevails in this case, however, depends on three questions: First, do the rights apply in juvenile proceedings, as well as in adult trials? Second, if so, was the conversation between the court, the prosecutor, and defense counsel a substantive part of the hearing, or, as the state contends, a mere "scheduling conference" during which "nothing substantive occurred"? And third, if the conversation was a substantive part of the hearing and the right applies in juvenile proceedings, did youth,

_____

[2] Contrary to the apparent belief of the trial court, the right of allocution is not the same as the right to be present at a criminal proceeding. " '[A]llocution' refers to a convicted defendant's opportunity to speak before sentencing[.]" *DeAngelo v. Schiedler*, 306 Or 91, 94 n 1, 757 P2d 1355 (1988). As such, it is one aspect of the larger "right to be heard during the entire criminal prosecution." *Id.* at 94.

[3] Article I, section 11, states, in part:

"In all *criminal prosecutions*, the accused shall have the right to public trial by an impartial jury * * *; *to be heard by himself* and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor[.]"

(Emphasis added.)

through counsel, waive the right? Because the rights do not apply in juvenile hearings, *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 857 P2d 842 (1993), we dispose of this case at the first step.

The issue in *Reynolds* was whether the jurisdictional phase of a juvenile proceeding under *former* ORS 419.476(1)(a) (1991), *renumbered as* ORS 419C.005(1) (1993),[4] is a "criminal prosecution" within the meaning of Article I, section 11, at which the accused would enjoy the attendant procedural rights. 317 Or at 563. The court's analysis began with an acknowledgment, based on an examination of common law, that when Article I, section 11, was drafted, "a juvenile * * * could have been prosecuted in the same manner as could any other accused felon [and] such a juvenile would have been entitled to a jury trial." *Id.* at 566. However, the court further reasoned that Article I, section 11, rights would inhere only if a juvenile delinquency proceeding could be considered a "criminal prosecution" under the contemporary juvenile code and courts. *Id.* at 567 ("The question then becomes: Have circumstances so changed that today a child in a juvenile delinquency proceeding * * * is faced with a 'criminal prosecution' as that term is used in Article I, section 11?"). The court examined the intervening developments in juvenile law and concluded, based on evidence that "[j]uvenile courts are concerned with rehabilitation, not punishment," *id.* at 574, that "in the juvenile code, the legislature so changed the way that a juvenile is treated as to create a proceeding that is *sui generis,*" *id.* at 575.

Thus, according to the court, the fact that the juvenile system differs in purpose and method from the adult criminal justice system indicates circumstances "so changed" from those of the Oregon framers so as to effectively unmoor

---

[4] ORS 419.476(1) (1991) provided, in part:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city[.]"

The 1993 legislature reorganized the juvenile code and moved *former* ORS 419.476(1)(a) to ORS 419C.005(1), retaining substantially the same text.

a youth's procedural rights from Article I, section 11, notwithstanding the framers' apparently contrary intent, and the fact that "delinquency proceedings have many of the 'due process' characteristics of adult criminal prosecutions." *Id.* at 574; *cf. State ex rel Juv. Dept. v. Clements*, 95 Or App 640, 645, 770 P2d 937 (1989) ("[A] juvenile faced with allegations that could result in confinement is entitled to the same procedural safeguards as an adult, so long as those procedures do not impede the purposes for which the juvenile system was designed."). As a result, the court concluded that the youth in that case was not entitled to a jury trial under Article I, section 11.

Applying *Reynolds* and its rationale, we reach the same conclusion in this case with respect to youth's assertion of allocution rights under Article I, section 11. Unlike the accused in *Reynolds*, youth asserts an entitlement to Article I, section 11, rights at the dispositional, rather than jurisdictional, phase of the juvenile proceeding. That distinction does not assist youth. The central feature that, according to *Reynolds*, sets juvenile law and proceedings apart from their counterparts in the criminal context is their rehabilitative purpose. That purpose is arguably more apparent at the dispositional phase, where the court evaluates a host of factors relevant to a youth's rehabilitative needs, *see* ORS 419C.411, and the youth becomes subject to the full range of rehabilitative measures at the court's disposal.

In sum, the right to be present and to allocute under Article I, section 11, does not apply at the dispositional phase of juvenile proceedings. Because youth's argument is based on the assertion that the court erred in depriving him of those rights under the Oregon Constitution, we must reject it on the basis of *Reynolds*.[5]

Affirmed.

---

[5] Youth makes no argument based on the United States Constitution or on any statute. We therefore do not decide whether the outcome would have been different had he made such arguments.