236                    October 3, 2013                    No. 44

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff*,

*v.*

DANIEL ALGEO,
*Defendant*.

J. W. P.,
*Petitioner on Review*,

*v.*

STATE OF OREGON
and Daniel Algeo,
*Respondents on Review*.

(CC CR100607; SC S060830)

En Banc

On petition for review pursuant to ORS 147.539.*

Argued and submitted April 29, 2013.

Erick J. Haynie, Perkins Coie, Portland, argued the cause and filed the brief for petitioner on review. With him on the brief were Nathan R. Christensen and Bryan D. Beel.

Paul L. Smith, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review State of Oregon. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Paula J. Lawrence, The Lawrence Law Firm, McMinnville, argued the cause and filed the brief for respondent on review Daniel Algeo.

Margaret Garven, Portland, filed a brief for *amicus curiae* The National Crime Victim Law Institute. With her on the brief was Amy C. Liu.

_____

\* Review of an order of the Yamhill County Circuit Court, Ronald W. Stone, Judge.

WALTERS, J.

The order of the circuit court is affirmed.

**WALTERS, J.**

Petitioner is a crime victim who filed a claim pursuant to ORS 147.515, alleging that the trial court had violated her right to "receive prompt restitution" under Article I, section 42(1)(d),[1] of the Oregon Constitution. The trial court entered an order denying petitioner's claim, and, pursuant to ORS 147.539, petitioner sought direct review of that order in this court. For the reasons that follow, we affirm the trial court's order.

The material facts are procedural and undisputed. Petitioner and her friend were crossing a street late at night when defendant, who had been drinking, hit them with his car and seriously injured them.[2] Defendant pleaded guilty to one count of driving under the influence of intoxicants and two counts of assault in the fourth degree for "intentionally, knowingly or recklessly caus[ing] physical injury." ORS 163.160. The trial court sentenced defendant to a combination of supervised probation, jail time, fines, and suspension of his driver's license. Pursuant to ORS 137.106, the trial court judgment also granted the state 90 days to submit a "reasonable final restitution amount."[3]

---

[1] Article I, section 42(1)(d) provides:

"To preserve and protect the right of crime victims to justice, to ensure crime victims a meaningful role in the criminal and juvenile justice systems, to accord crime victims due dignity and respect and to ensure that criminal and juvenile court delinquency proceedings are conducted to seek the truth as to the defendant's innocence or guilt, and also to ensure that a fair balance is struck between the rights of crime victims and the rights of criminal defendants in the course and conduct of criminal and juvenile court delinquency proceedings, the following rights are hereby granted to victims in all prosecutions for crimes and in juvenile court delinquency proceedings:

"* * * * *

"The right to receive prompt restitution from the convicted criminal who caused the victim's loss or injury[.]"

[2] Both women were given emergency medical treatment at the scene. Petitioner was identified as having serious physical injuries, including a fractured skull. She was transported by Life Flight helicopter to a Portland hospital for emergency treatment. The other victim was taken by ambulance to the Willamette Valley Medical Center for non-life-threatening injuries.

[3] ORS 137.106 provides, in part:

"(1) When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of the damages. If the court finds from the evidence presented that a victim suffered

ORS 137.106(1) provides that, when a trial court determines that a person has been convicted of a crime that has resulted in economic damages, the court must include in its judgment a requirement that the defendant pay restitution to the victim in the "full amount" of those damages. In this case, the state timely submitted a proposed supplemental judgment requesting that defendant be ordered to pay restitution in an amount that defendant stipulated represented the full amount of petitioner's economic damages. The trial court found that criminal conduct had occurred; that petitioner had suffered economic damages; and that, but for defendant's criminal conduct, petitioner would not have incurred those damages. However, the court asked the parties to brief two questions: (1) whether the court may grant an award of restitution that exceeds the amount that petitioner could have recovered in a civil action; and (2) whether a contributory negligence analysis is appropriate in the context of a restitution determination.

After considering the parties' arguments, the court issued a letter opinion dated July 17, 2012, awarding restitution in an amount equal to 10 percent of petitioner's economic damages. The court reasoned that the economic damages recoverable through criminal restitution are those that are recoverable in a civil action and that, in a civil action, petitioner could not have obtained judgment for damages resulting from her own negligence. The court found that petitioner had been "jaywalking" when defendant struck and injured her and concluded that that unlawful activity, rather than defendant's criminal conduct, was the "cause" of petitioner's injuries. However, because defendant had admitted at sentencing that he recklessly had caused physical injury

---

economic damages, in addition to any other sanction it may impose, the court shall include one of the following in the judgment:

"(a) A requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court.

"(b) A requirement that the defendant pay the victim restitution, and that the specific amount of restitution will be established by a supplemental judgment based upon a determination made by the court within 90 days of entry of the judgment. In the supplemental judgment, the court shall establish a specific amount of restitution that equals the full amount of the victim's economic damages as determined by the court."

to petitioner, the court determined that the state had proved that defendant had caused "some," although not more than a "nominal percentage," or 10 percent, of petitioner's economic damages. "It is clear from the evidence that almost all of the economic damages suffered by the victim[] were caused by [her] violation of the law," the court wrote. "I don't believe I have any authority to award more." The court then entered a supplemental judgment in an amount that reflected its reasoning. Neither party appealed from that judgment, which was entered on August 3, 2012.

On August 13, 2012, represented by private counsel, petitioner filed a claim in the underlying criminal proceeding alleging that the court had entered the supplemental judgment in error and in violation of Article I, section 42, of the Oregon Constitution. Petitioner set out her claim on Form 4.100.2a of the UTCR Appendix of Forms, "Claim of Violation of Crime Victims' Right(s)." On September 13, 2012, petitioner filed an amended claim using the same form. In her amended claim, petitioner alleged that the court's supplemental judgment had violated her right "[t]o receive prompt restitution from the convicted criminal who caused [her] loss or injury." As a remedy, petitioner sought restitution in the full amount of her economic damages.

After considering additional briefing and conducting another hearing, the trial court entered an order denying petitioner's claim "for the reasons on the record includ[ing the court's] letter opinion of July 17, 2012."[4] Petitioner sought review of the trial court's order pursuant to ORS 147.539.[5] This court exercised its discretion to grant review and

---

[4] ORS 147.517 requires that, upon receipt of a facially valid claim under ORS 147.515, the court "shall issue an order to show cause why the victim should not be granted relief." If the court determines that the victim has not alleged a facially valid claim, the court shall enter an order dismissing the claim, in conformance with certain statutory requirements. ORS 147.515(5). It appears that the trial court issued its October 29, 2012, order denying petitioner's motion in lieu of either a "show cause" order or an order dismissing petitioner's claim as facially invalid. In their arguments to this court, the parties do not raise the question whether the trial court followed the procedures mandated by ORS 147.515.

[5] ORS 147.535(4) provides, in part, that "[a]ppellate review of an order issued under ORS 147.515 *** shall be as provided in *** ORS 147.539 in all appeals arising under ORS 147.500 to 147.550 except those described in paragraph (a) of this subsection." ORS 147.539(1) provides that the Supreme Court has discretionary jurisdiction to review orders described in ORS 147.535(4)(b).

extended the time to issue its final decision pursuant to ORS 147.539(4)(b).[6]

Before considering petitioner's arguments, we think it helpful to lay out the pertinent constitutional and statutory framework that governs petitioner's claim. Article I, sections 42 and 43, of the Oregon Constitution provide crime victims with specifically enumerated rights, including "[t]he right to receive prompt restitution from the convicted criminal who caused the victim's loss or injury." Or Const, Art I, § 42(1)(d). Article I, section 42(3)(a), provides that every victim shall have a "remedy by due course of law for violation of a right established in [section 42]." Article I, section 42(3)(b), provides that a "victim may assert a claim for a right established in [section 42] in a pending case, by a mandamus proceeding if no case is pending or as otherwise provided by law."

The legislature enacted ORS 147.500 to 147.550 to effectuate those constitutional rights. *See* ORS 147.504(1) (so stating). Under those statutes, a victim who wishes to allege a violation of a right granted by Article I, section 42, must inform the court within 30 days of the date the victim knew, or reasonably should have known, of the facts supporting the allegation. ORS 147.515(1). The victim then must describe those facts and propose a remedy. *Id*. If the trial court deems the victim's claim to be facially valid, it must issue an order to "show cause why the victim should not be granted relief," ORS 147.517(2), and may hold a hearing on the victim's claim, ORS 147.530(1). At the conclusion of that hearing, the trial court must issue an order granting or denying the relief requested. ORS 147.530(4). A party not satisfied with the court's order may seek review in this court pursuant to ORS 147.535, 147.537, and 147.539.

In this case, petitioner and the trial court followed the statutory procedures that we have outlined. Petitioner filed a claim alleging a violation of her right to "receive prompt

---

[6] ORS 147.539(4)(a) generally requires this court to issue its decision on appeal within 21 days after the date that the court issued the order granting review. We determined that the ends of justice that would be served by permitting the parties to file briefs and participate in oral argument outweighed the best interests of the victim, the prosecuting attorney, the defendant, and the public in this case. We thus extended the applicable time requirement for issuing our final decision, pursuant to 147.539(4)(b).

restitution" under Article I, section 42, and the trial court entered an order denying that claim. On review, petitioner does not contest the trial court's determination that she was 90 percent responsible for the injuries that she suffered; rather, she argues that ORS 137.106(1)(a) requires that a person who commits a crime that results in economic damages pay the "full amount" of those damages, irrespective of the fault of the victim or any third party. Petitioner interprets Article I, section 42(1) d), as incorporating that statutory requirement. Alternatively, petitioner argues that this court has authority to determine whether the trial court committed statutory error by failing to impose restitution in the full amount of her economic damages.

In accordance with our usual approach, we take up petitioner's statutory argument before we consider her constitutional argument. *Burt v. Blumenauer*, 299 Or 55, 70, 699 P2d 168 (1985). In doing so, we proceed differently than this court did in *State v. Barrett*, 350 Or 390, 255 P3d 472 (2011). In *Barrett*, the victim claimed a violation of her constitutional right to advance notice of, and the right to be present at, the critical stages of a criminal prosecution.[7] Or Const, Art I, § 42(1)(a). Although the victim in *Barrett* alleged that her statutory rights had been violated, the statutes that she cited provided rights duplicating those set out in the constitution; those statutes were not necessary to the victim's constitutional argument. The trial court held that the state had violated the victim's constitutional and statutory rights, but did not provide a remedy for those violations. *Id*. at 396-97. Therefore, the trial court denied the victim's claim.

On review, this court began its analysis with the victim's claim that her constitutional rights had been violated. The court explained that, in enacting ORS 147.500 to 147.550, the legislature had "created a clear and expedited

---

[7] Article I, section 42(1), provides, in part, that

"the following rights are hereby granted to victims in all prosecutions for crimes and in juvenile court delinquency proceedings:

"(a) The right to be present at and, upon specific request, to be informed in advance of any critical stage of the proceedings held in open court when the defendant will be present, and to be heard at the pretrial release hearing and the sentencing or juvenile court delinquency disposition[.]"

procedural path for a victim to assert claims for the violation of her constitutional rights, both at trial and on appeal," but that the procedural path to a statutory remedy was "less clear." *Id*. at 398-99. Therefore, the court departed from its usual approach and, on the merits, concluded that the victim had proved a violation of Article I, section 42(1)(a), and was entitled to the remedy that she sought—a resentencing hearing at which she could appear. *Id*. at 407. Given those conclusions, there was no need for the court to consider, in addition, whether a statutory violation had occurred.

This case is different. Here, Article I, section 42, does not explicitly require, as ORS 137.106(1)(a) does, that a trial court award restitution in "the full amount of the victim's economic damages." Rather, Article I, section 42, provides that a crime victim is entitled to "receive prompt restitution from the convicted criminal who caused the victim's loss or injury." Petitioner's argument is that we should interpret that constitutional right to incorporate the statutory requirement or, alternatively, that we should review the trial court's decision to determine whether the trial court committed statutory error in ordering restitution that constitutes only 10 percent of petitioner's economic damages. If ORS 147.500 to 147.550 permits the latter review, we need not take up an issue of constitutional interpretation that our "salutary sense of judicial restraint" counsels us to avoid. *See Barrett*, 350 Or at 397. Thus, we adhere to our "first things first" approach in this proceeding and analyze our authority to consider, in this proceeding, whether the trial court committed statutory error.

In that regard, it is important to remember that the question of the trial court's obligation to enter restitution in the "full amount" of petitioner's economic damages first arose when the state proposed a supplemental judgment seeking restitution in that amount. The parties—at that time, the state and defendant—fully briefed the issue, and the state took the position that petitioner takes in this appeal—that ORS 137.106(1) requires restitution in full, that the amount recoverable in a civil action is irrelevant to a restitution award, and that the trial court was precluded from reducing the restitution award to reflect the extent of a victim's "fault." The trial court disagreed with the state's argument and

entered judgment in an amount equal to 10 percent of petitioner's economic loss. The state did not appeal to the Court of Appeals from that supplemental judgment, although it was permitted to do so. *See* ORS 138.060(1)(e) (providing for appeal to the Court of Appeals); *State v. Ceballos*, 235 Or App 208, 210, 230 P3d 954 (2010) (state's appeal from supplemental judgment of restitution). Instead, petitioner filed a claim in the trial court alleging a violation of her constitutional right, and the trial court entered an order denying that constitutional claim. It is that order that is before us on review.

Petitioner nevertheless contends that this court is authorized to consider whether the trial court committed statutory, as opposed to constitutional, error in entering that judgment. Petitioner argues that no statute expressly *prohibits* this court from that exercise of jurisdiction. In fact, petitioner notes, ORS 147.535(3) does not limit this court's jurisdiction to constitutional issues. Rather, it provides that "the jurisdiction of the Supreme Court is limited to the order for which appellate review is sought." Thus, petitioner suggests, when a victim seeks review of such an order on statutory as well as constitutional grounds, this court may address both issues.

In our view, the statute to which petitioner refers— ORS 147.535—resolves the issue that petitioner raises, but resolves it against her.[8] The only jurisdiction that that statute grants is jurisdiction to review the order of a trial court

---

[8] ORS 147.535 provides, in part, that,

"(1)(a) Notwithstanding any other provision of law and except as provided in paragraph (b) of this subsection, appellate review of an order issued under ORS 147.515, 147.520, or 147.530 shall be solely as provided in this section and ORS 147.537, 147.539, and 147.542.

"(b) A defendant who seeks to appeal an order issued under ORS 147.515, 147.520 or 147.530 must do so in the manner provided for appeals in ORS chapter 138. The provisions of this section and ORS 147.537, 147.539 and 147.542 do not apply to an appeal under ORS chapter 138.

"* * * * *

"(2) Jurisdiction for appellate review of an order issued under ORS 147.515, 147.520 or 147.530 is vested originally and exclusively in the Supreme Court.

"(3) Subject to ORS 147.542, the jurisdiction of the Supreme Court is limited to the order for which appellate review is sought and the trial court retains jurisdiction over all other matters in the criminal proceeding.

denying a petitioner's *constitutional* claim. In granting crime victims an opportunity for direct review of such orders in this court, the legislature has permitted crime victims a unique procedural path. *See Barrett*, 350 Or at 398 (expedited procedural path provided by ORS 147.517, 147.530(5), and 147.535(2) designed to allow victims to assert claims for violation of constitutional rights). Other judgments or post-judgment orders in criminal cases generally are appealable only to the Court of Appeals. *See* ORS 138.040, 138.050, 138.053, 138.057, 138.060, and 147.535(1)(b) (governing appeals to the Court of Appeals in criminal cases and stating persons who may appeal and under what circumstances). Thus, in this case, the state was permitted to appeal the supplemental judgment that the trial court entered to the Court of Appeals. Had the state taken such an appeal, it could have argued that the trial court had committed statutory error in entering the supplemental judgment in an amount less than petitioner's full economic damages. However, the legislature has limited direct review in this court under ORS 147.535(3) to considering whether the trial court committed *constitutional* error when it denied petitioner's claim that her *constitutional* rights were violated.[9]

That does not mean, however, that ORS 137.106 is completely immaterial to our task. Petitioner contends that Article I, section 42(1)(d), incorporates the requirements of ORS 137.106, and we therefore are required to analyze that statute in the course of analyzing petitioner's constitutional claim. We turn now to that task and consider whether Article I, section 42(1)(d), guarantees a victim the right to

---

"(4) Appellate review of an order issued under ORS 147.515, 147.520 or 147.530 shall be as provided in:

"(a) ORS 147.537 if the order was issued under ORS 147.520 or 147.530 in a criminal proceeding in which a defendant is charged with a felony or a person Class A misdemeanor ***.

"(b) ORS 147.539 in all appeals arising under ORS 147.500 to 147.550 except those described in paragraph (a) of this subsection."

[9] We emphasize that the legislature is not foreclosed from making a different choice. The legislature has the authority, if it wishes to exercise it, to permit victims to file claims in the trial court alleging violation of their statutory rights, to permit trial courts to decide those claims, and to permit the Court of Appeals or this court to consider appeals of such decisions. Such a path to appellate review is not constitutionally prohibited; it simply is not provided by ORS 147.535, the statute on which petitioner relies in this case.

receive the "full amount of [her] economic damages" required by ORS 137.106(1)(a).

Because Article I, section 42, was enacted by the voters through ballot measure, we must consider the voters' intent. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). We focus first on the text and context of Article I, section 42(1)(d), but also may consider the measure's history, should it appear useful to our analysis. *Cf. State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The text of Article I, section 42(1)(d), grants a victim the right to receive prompt restitution. Section 42 does not define the term "restitution," and, although it provides that a victim "shall have remedy by due course of law for violation of a right established in [that] section," it does not further describe that remedy. Or Const, Art I, § 42(3)(a). Nevertheless, both petitioner and the state argue, for different reasons, that Article I, section 42(1)(d), confers a right to receive the "full amount" of a victim's economic damages. Petitioner suggests that that meaning is captured by the term "restitution" itself, because the "ordinary meaning" of "restitution" is to "restor[e] someone to a position he occupied before a particular event." Alternatively, petitioner argues that, because Article I, section 42, permits the legislature to "effectuat[e]" victims' constitutional rights, it confers the right to receive "restitution" as that term is statutorily defined.

The state makes a somewhat different argument. It contends that Article I, section 42(1)(d), grants a crime victim a "procedural" right to receive promptly the restitution that a criminal defendant statutorily is required to pay. Alternatively, the state argues that, when the voters amended Article I, section 42, in 2008, they intended the term "restitution" to have its contemporaneous statutory meaning; that is, a right to receive restitution as that term was defined by ORS 137.106 in 2008.[10]

We begin with petitioner's suggestion that, in using the term "restitution," the voters intended to give that term its ordinary meaning and to require that a victim be fully

---

[10] In 2008, as today, ORS 137.106 required that a trial court judge impose restitution in the "full amount" of a victim's economic damages.

restored or returned to the condition that he or she had enjoyed prior to the crime. Although petitioner certainly is correct that the ordinary meaning of the term "restitution" includes the idea of repayment,[11] we are not persuaded that the voters intended that term to require repayment "in full."

In 1976, before Article I, section 42, was adopted, this court had interpreted the original version of the criminal restitution statute, *former* ORS 137.540(10)(1975), to permit a trial court to award a victim an amount of restitution that was less than the amount of the victim's loss. *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976). *Former* ORS 137.540(10) authorized a sentencing court to require, as a condition of probation, that the defendant "[m]ake *reparation* or *restitution* to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court." (Emphases added.) The court interpreted the term "restitution" to mean "the return of a sum of money, an object, or the value of an object which a defendant wrongfully obtained in the course of committing the crime." *Id*. at 687-88. The court interpreted the term "reparation" to have a broader meaning—"repairing" or "restor[ing]." However, the court held that both terms encompassed only "reimbursement for the victim's liquidated or easily measurable damages resulting from the charged offense," *id*. at 688, and noted that it "[did] not mean to imply that a judge could not impose restitution or reparation in an amount less than the victim's loss." *Id*. at 688 n 8.

In 1999, when the voters enacted Article I, section 42, the criminal restitution statute—ORS 137.106 (1999), *amended by* Or Laws 2003, ch 670, § 1—continued to permit trial courts to impose restitution in amounts that were less than a victim's full economic damages.[12] At that time, the term "restitution" was statutorily defined as the "full, partial or nominal payment of pecuniary damages to a victim." ORS 137.103(3)(1999). "Pecuniary damages," in turn, were limited to "special

---

[11] Petitioner cites *Hughey v. United States*, 495 US 411, 416, 110 S Ct 1979, 109 L Ed 408 (1990), for the proposition that "the ordinary meaning of 'restitution' is restoring someone to the position he occupied before the particular event."

[12] Although the Oregon legislature made various amendments to the criminal restitution statute following *Stalheim*, *see State v. Hval*, 174 Or App 164, 174-76, 25 P3d 958 (2001) (providing overview of amendments), those amendments did not require the court to impose restitution in the amount of a victim's full economic damages.

dam-ages \*\*\* which a person could recover against the defendant in a civil action" arising out of the defendant's criminal activities. ORS 137.103(2) (1999). Whether restitution was imposed, and in what amount, was entirely within the sentencing court's discretion. ORS 137.106(1) (1999) (making restitution a discretionary part of a defendant's sentence). Thus, before the adoption of Article I, section 42, the legislature had used the term "restitution" to mean repayment, but not to mean, necessarily, repayment of economic damages "in full." We are not persuaded that the ordinary meaning of the term "restitution" incorporates the concept of repayment of economic damages "in full" or that the voters intended the term "restitution" to carry that meaning when they enacted Article I, section 42.

We turn now to the argument, advanced by both petitioner and the state, that Article I, section 42, grants crime victims a right to receive the restitution required by statute. Petitioner bases her argument on the text of Article I, section 42(3)(c), which states that the legislature may "provide by law for *further effectuation*" of the rights and remedies set forth in that subsection. (Emphasis added.) The legislature "effectuated" Article I, section 42, petitioner argues, by amending ORS 137.106 to require that trial courts impose restitution in the "full amount" of a victim's economic damages. Therefore, petitioner asserts, that statutory requirement has become an element of a victim's constitutional right to "receive prompt restitution." In a related vein, the state contends that the voters who adopted Article I, section 42, would have understood that the statutory meaning of the term "restitution" had changed over time and would continue to do so. In the state's view, the fact that Article I, section 42, did not define the term "restitution" suggests that the voters intended to create a procedural right that would ensure that victims receive promptly the amount of restitution to which they were statutorily entitled at the time that restitution was imposed.

Before we consider those arguments, it is important to clarify the difference between a procedural and a substantive right to receive restitution. A right to receive, promptly, whatever restitution a trial court orders is procedural in

nature. A right to receive, promptly, payment of a specific amount, or payment measured by a specific standard, is both a substantive and a procedural right. Petitioner argues for what she recognizes is a substantive right. She contends that the constitution requires the prompt payment of restitution in a specific amount—that is, the amount required by statute at the time that restitution is ordered. The state also contends that a victim has a constitutional right "to promptly receive the restitution *that a convicted defendant is required to pay under current restitution statutes*" (emphasis added), but it describes its interpretation as purely procedural.[13]

We disagree with the state's characterization of its argument. The state's interpretation of Article I, section 42, would permit a victim to claim not only a procedural error should a trial court fail to award restitution "promptly," but also substantive error should a trial court fail to award restitution *in a particular sum*—the sum mandated by statute. Because the state, like petitioner, argues that the trial court committed error by awarding petitioner less than the "full amount" of her economic damages, we conclude that the state advances the same argument as does petitioner, albeit on different grounds. For the following reasons, we reject both parties' contentions.

The logical result of the parties' arguments is that, as used in Article I, section 42, the term "restitution" may have a different substantive meaning depending on how that term is defined by statute over time. Thus, in 1999, when the trial court had statutory discretion to award restitution that was full, partial, or nominal, a crime victim's constitutional right also would have been limited accordingly. But, in 2012, the constitution would have granted victims the right to receive restitution in the "full amount" of the victims' economic damages—the amount required by ORS 137.106 at that time. Following the parties' arguments, the meaning of Article I, section 42, would change, not as a result of the

---

[13] At another point in its brief, the state argues that the voters intended to enshrine a victim's right "*to quickly* receive whatever restitution *was imposed*." (Emphases added.) However, because the state also argues for the interpretation we discuss above, and because the state does not claim that petitioner did not receive "promptly" the restitution that the trial court imposed, we limit our analysis to that addressed above.

people's amendment of the constitution, but by legislative action. Such an interpretation arguably could raise a question of constitutional magnitude, because Article XVII, section 1, of the Oregon Constitution, requires proposed amendments to the Oregon Constitution to be referred "to the people for their approval or rejection."

We need not address that potential issue in this case, however, as we do not glean from either the text or context of Article I, section 42, an intent to make the meaning of the term "restitution" dependent on future statutory changes. First, we reject petitioner's argument that that intent is evidenced by the grant of legislative authority to "effectuate" provisions of Article I, section 42. Subsection (3) of section 42 provides that "[e]very victim *** shall have remedy by due course of law for violation of a right established in this section," and subsection 42(3)(b) provides that "[a] victim may assert a claim for a right established in this section in a pending case, by a mandamus proceeding if no case is pending or as otherwise provided by law." Subsection (3)(c) states that the legislature may "provide by law for further effectuation of the provisions of *this subsection*." (Emphasis added.) The subsection referenced is subsection (3)—the subsection that pertains to remedies for violating the rights set forth in subsection (1). Thus, the authority that Article I, section 42(3)(c), grants is authority to further spell out or enable the *remedies* that the constitution provides and to specify procedural means of obtaining them. The voters made that meaning clear by providing in subsection 42(3)(c) two examples of actions that the legislature may take pursuant to its authority to "effectuate" under Article I, section 42(3)(c), both of which are procedural in nature: the authority to provide "expedited and interlocutory consideration of claims for relief," and the authority to establish "reasonable [time] limitations." By its terms, Article I, section 42, does not grant the legislature authority to define or determine the substantive rights set forth in subsection (1) of section 42.

Nor does the fact that the voters who adopted Article I, section 42, may have been aware that the legislature had changed the nature of a trial court's authority to grant restitution over time convince us that the voters intended to

grant constitutional stature to variable statutory rights. We agree with the state that the voters may not have intended to fix a victim's right to restitution to the 1999 statutes, but that does not mean that the voters intended to give the word "restitution" a later-enacted statutory meaning.

For the reasons stated, we reject the parties' arguments that the term "restitution" as used in Article I, section 42(1)(d), confers a substantive right to receive the "full amount" of a victim's economic damages, either because the term "restitution" carries that meaning or because the voters intended that term to incorporate its statutory meaning at the time that restitution is imposed. We now consider the state's alternative argument that, when the voters amended Article I, section 42, in 2008, they intended that "restitution" be defined according to the statutory definition of that term at that time. The state suggests that, if Article I, section 42(1)(d), previously had created a right to restitution that was "illusory" because it was tied to the entirely discretionary statutory scheme in place in 1999, then the purpose of the 2008 amendments to Article I, sections 42 and 43, was to "rectif[y] that situation."

We can dispense with that argument summarily. In 2008, the voters amended Article I, section 42, to provide victims with a "remedy by due course of law" for violation of their existing constitutional rights. Or Const, Art I, § 42(3)(a). The fact that the voters intended to guarantee a remedy for the violation of existing constitutional rights does not indicate an intent to change the substance of those rights themselves. We conclude that the 2008 amendments to Article I, section 42, do not evince voter intent to provide a constitutional right to the "full amount" of a victim's economic damages, as provided by Oregon statute.

In reaching that conclusion, we do not decide whether the constitutional right to "receive prompt restitution" is purely procedural or instead carries a substantive element and requires restitution in some amount or as measured by some standard. That is a question for another day, because, in this case, petitioner does not contend that Article I, section 42(1)(d), entitles her to receive a sum other than the "full amount" of her economic damages as required by ORS

137.106. Petitioner does not contend, for example, that the constitution entitles her to a "substantial" sum in restitution to compensate her for her loss. *See Howell v. Boyle*, 353 Or 359, 362, 298 P3d 1 (2013) (discussing constitutional "right to remedy" in terms of whether remedy is "substantial"). We therefore limit our holding to that necessary to decide this case: Article I, section 42(1)(d), does not grant petitioner a right to "restitution" in the "full amount" of her economic damages as that term is defined in ORS 137.106. This court does not have jurisdiction to determine the additional question whether the trial court violated petitioner's statutory rights when it awarded restitution in an amount limited to 10 percent of petitioner's economic damages.

The order of the circuit court is affirmed.