DUNCAN, J.
**809 The Oregon Constitution provides that the victim of a crime has the right "to be heard at *** sentencing." Or. Const., Art. I, § 42 (1)(a). Appellant, who is a crime victim, filed a claim in the trial court, pursuant to ORS 147.515, alleging that the trial court violated her right to be heard when it sentenced the defendant who had committed crimes against her. Specifically, appellant alleged that the trial court violated her right to be heard when it interrupted her victim impact statement and when it later terminated the statement without warning or explanation. The trial court denied the claim, and appellant brought this appeal, pursuant to ORS 147.535.
*303 This case requires us to determine the scope of a crime victim's constitutional right to be heard during a sentencing hearing. As explained below, we hold that a trial court has the authority and responsibility to conduct a sentencing hearing in an orderly and expeditious manner and may exclude certain statements by victims, including those that are irrelevant, unfairly prejudicial, or cumulative. In addition, a trial court may limit a victim impact statement if the victim disregards the trial court's appropriate instructions regarding the content or length of the statement. We further hold that, in this case, the trial court's interruptions of appellant's statement, which were for the permissible purpose of having appellant focus on the charged crimes and her own experiences with the defendant, did not violate appellant's right to be heard. However, the trial court's termination of appellant's statement, when appellant was discussing a relevant topic that was not outside the limits imposed by the trial court, did violate appellant's right to be heard. Therefore, we reverse the trial court's decision denying appellant's claim, vacate defendant's sentence, and remand the case to the trial court for a new sentencing hearing.
BACKGROUND
In April 2017, the defendant in the underlying criminal case (hereafter, defendant) was charged by indictment with six Class C felonies: two counts of assault in the **810 fourth degree ( ORS 136.160(3) ), two counts of coercion ( ORS 163.275 ), one court of strangulation ( ORS 163.187(4) ), and one count of attempted assault in the second degree ( ORS 161.405(2)(c) ). Each count alleged that the charged crime constituted domestic violence. ORS 135.230(4).
In December 2017, the trial court facilitated settlement negotiations between the prosecutor and defendant, who was represented by counsel. Although appellant did not participate in those negotiations, she sat in the hallway outside the room where the negotiations occurred, and the prosecutor consulted with her before ultimately agreeing with defendant to terms of a plea and sentencing. That day, defendant pleaded guilty to one count of assault in the fourth degree, one count of coercion, and one count of attempted assault in the second degree, each of which constituted domestic violence. The trial court accepted that plea, dismissed the remaining counts, and scheduled the sentencing hearing for a later date.
That sentencing hearing took place in January 2018. Appellant attended the hearing, and the trial court invited her to read her prepared victim impact statement. Appellant began by describing her own difficult family circumstances growing up. She then described how, as her relationship progressed with defendant, he became increasingly jealous and possessive. According to appellant, defendant attempted to isolate her from friends and physically intimidate her. Appellant also stated that defendant previously had raped her on two occasions.
When appellant began describing the circumstances of one of those uncharged crimes the trial court interrupted, stating:
"THE COURT: Ma'am, please don't tell me the details of that.
"[APPELLANT]: Why?
"THE COURT: I don't want to hear this. Continue with your message.
"[APPELLANT]: This is a part of my message, so I will continue to read. It's not very long.
**811 "THE COURT: I don't want to hear the details of your-
"[APPELLANT]: I'm not going to go into any details."
Appellant continued reading her statement. She described other acts of sexual coercion and physical abuse and how, after those incidents, defendant would make her feel responsible for them. She also stated that defendant's misconduct stems not from his problems with alcohol but from his personal values and attraction to "alt-right racist ideas."
Appellant then described responses she had received from third parties on social media after she posted photographs of the injuries defendant caused her. After appellant described six of the online comments, including comments alleging prior instances of misconduct by defendant, defense counsel *304 objected, and the trial court instructed appellant not to repeat what she had heard from others:
"[DEFENSE COUNSEL]: Your Honor, I believe this has gone beyond [appellant's] right to make a statement. This is other people. We don't know who these people are.
"THE COURT: Are you done with your statement, [appellant]?
"[APPELLANT]: Not my entire statement, but I'm finished with-
"THE COURT: Don't tell me what other people said to you.
"[APPELLANT]: Yes, sir.
"THE COURT: Tell me about your statement."
Appellant picked up where she left off, describing how she found the online comments disheartening because they indicated that defendant's misconduct was part of a larger pattern of behavior that went back many years. According to appellant, defendant spirals into hatred and violence when his view of himself is challenged. Appellant stated that, when defendant acts out like that, he has little or no sense of guilt. As a result of that, appellant expressed concern that defendant is capable of murder.
**812 Appellant then described her sense of embarrassment for believing defendant's statements that he would end his violent behavior. She also described the difficulty that she has experienced forgiving herself, not only for allowing her relationship with defendant to continue, but also for protecting defendant from prosecution, even after he injured her and prevented her from going to the hospital for treatment. Appellant went on to recount defendant's lack of remorse, which appellant attributed to defendant's selfishness and self-centeredness. Appellant expressed her hope that defendant would learn how damaging those traits can be on those who love him.
But, according to appellant, those traits were facilitated by defendant's parents, who failed to hold defendant accountable for his misconduct. Appellant described how defendant's mother bought alcohol for him, even though he had a history of drinking problems. Appellant also recalled meeting defendant's mother for the first time while appellant was moving out of the house she had shared with defendant. Appellant told the trial court, "[Defendant's mother] told me *** that I caused [defendant] to drink because I make him miserable, and that's why he hit me. And it's my fault that he hits me, because I didn't leave." Appellant then stated, "And I just want to say that that's a problem. That's a huge problem, and I feel sorry that [defendant] was not taught better or watched better so much so that he became a problem for society."
At that point, appellant had been speaking for almost 20 minutes, and the trial court said:
"THE COURT: Okay. I've heard enough. Thank you.
"[APPELLANT]: (Inaudible) done.
"THE COURT: Thank you. [Defense counsel], do you have something to add?
"[THE PROSECUTOR]: Your Honor, respectfully, I do think she's-
"THE COURT: I know what you think. I've heard enough.
"[THE PROSECUTOR]: (Inaudible).
**813 "[APPELLANT]: (Inaudible).
"THE COURT: There's nothing more that she can say that I need to hear. Sit down, ma'am."
Defendant's counsel then asked the court to sentence defendant according to the negotiated settlement, which the court did, imposing 28 months' imprisonment and 32 months' post-prison supervision for attempted assault in the second degree, 18 months' imprisonment and 24 months post-prison supervision for assault in the fourth degree, to be served concurrently, and 60 months' probation for coercion.
After the trial court announced the sentence, the prosecutor indicated that appellant wanted to complete her victim impact statement. But the trial court denied that request, stating, "I think [appellant] has said enough." The trial court then ended the hearing.
About two weeks later, in mid-February, appellant filed a claim in the trial court pursuant to ORS 147.515 for violation of her *305 rights as a crime victim, using the form that is contemplated by that statute. In that claim, appellant alleged that the trial court violated Article I, section 42(1)(a), of the Oregon Constitution, which affords a crime victim the right "to be heard at *** the sentencing." As a remedy for that violation, appellant asked that the trial court vacate defendant's sentence and hold a new sentencing hearing. See ORS 147.515(1) (authorizing crime victim to "propose a remedy" for violation of rights).
Upon receipt of a facially valid claim of a violation of a crime victim's rights, a trial court is required to issue an order to show cause why the victim should not be granted relief. ORS 147.515(3) ; ORS 147.517(2). Such an order must include the date by which responses to the claim are due and the date on which the court will conduct the show cause hearing on the claim. ORS 147.517(2). In this case, the trial court determined that appellant's claim was facially valid and issued a show cause order, requiring that any responses be filed by March 20 and scheduling a hearing for March 30.
The trial court did not receive any responses to its order, but held the show cause hearing on March 30. Appellant, who was represented by counsel, and the **814 prosecutor both appeared in support of the claim. Defendant also appeared and opposed the claim through counsel. Before hearing the parties' arguments, the trial court stated that it had reviewed the audio recording of the sentencing hearing multiple times. The trial court acknowledged that it had interrupted appellant's victim impact statement twice and stopped appellant before she had the opportunity to complete her statement. As to both of the interruptions and the termination of appellant's statement, the trial court stated that its objective had been "to focus on the statements that [appellant] wanted to say and how she felt about it, and about the crimes that * * * defendant was convicted of."
The parties' arguments were brief. Appellant argued that, by interrupting her and stopping her before she could complete her statement, the trial court violated appellant's constitutional right to be heard. In response, defendant first argued that the trial court no longer had jurisdiction to order a resentencing, and then argued that appellant's right was not violated because the trial court provided appellant with a reasonable opportunity to be heard.
During the show cause hearing, the trial court offered appellant multiple opportunities to complete her victim impact statement. But on the advice of her attorney, she declined to do so, asserting that the trial court had to determine whether appellant's right to be heard at the initial sentencing had been violated and, if it had, then the court was required to vacate defendant's sentence and hold a new sentencing hearing.
After considering the parties' arguments, the trial court denied appellant's claim on the ground that her right to be heard had not been violated. The trial court concluded, "I believe *** that [appellant] had a reasonable opportunity to express her views to the court, and that I find no constitutional or statutory violation of her right to be heard." As a result, the trial court declined to vacate defendant's sentence and order a new sentencing hearing.
Under ORS 147.530(4) to (5), a trial court is required to issue a written order within seven days of the show cause hearing on a victim's rights claim, unless the court finds good cause to issue the order at a later date, and the order **815 must grant or deny the relief requested and state the court's reasons for its decision. In this case, the court issued an oral ruling denying appellant's claim at the March 30 show cause hearing and then, on April 4, issued a written order that simply stated that appellant's claim was denied. That order did not include the court's reasons for its decision.
A party seeking appellate review of a trial court's ruling on a victim's rights claim must file his or her appeal in this court within seven days of the order being challenged. ORS 147.537(8)(a). Appellant in this case filed a timely notice of appeal and memorandum of law in this court on April 11, 2018, which was seven days after the trial court entered the order that denied her claim but did not state the reasons for its decision.
*306 The day after appellant filed her notice and memorandum challenging the trial court's order, the trial court issued a second order, this time containing findings of fact and reasons for the ruling. Because the trial court erred by not including those findings and reasons in the original order or within the statutorily required timeframe, which prevented appellant from addressing the second order in her memorandum to this court, we do not consider the contents of the second order. See ORS 147.530(5)(a)-(b) (requiring a written order that includes "the reasons relief was granted or denied" to be issued "within seven days from the date of the hearing," absent a finding of good cause for a later issuance).
Both the state and defendant filed timely responses to appellant's notice and memorandum. ORS 147.537(12) (requiring responses within seven days of the notice of appeal). The state agrees with appellant and argues that the trial court erred by denying appellant's claim. Defendant argues that appellant's rights were not violated, because she had a reasonable opportunity to be heard at the sentencing hearing and failed to prove that her remaining statement would have been allowed.
ANALYSIS
This dispute arises under the statutory scheme enacted by the legislature to effectuate certain rights **816 of crime victims that are protected under the Oregon Constitution. ORS 147.535(4)(a) ; ORS 147.537(1). Within that statutory scheme, our jurisdiction in this case is limited to reviewing the trial court's order denying appellant's claim that the trial court violated her constitutional right to be heard at sentencing. ORS 147.535(3) ; see State v. Algeo , 354 Or. 236, 244-45, 311 P.3d 865 (2013) ("The only jurisdiction that [ ORS 147.535 ] grants is jurisdiction to review the order of a trial court denying a petitioner's constitutional claim." (Emphasis in original) ).
Our standard of review of the trial court's order is set out by statute. As to factual findings, this court "may not substitute its judgment for that of the trial court," and we review the trial court's factual findings "for evidence in the record to support the finding." ORS 147.537(17). As to legal conclusions, we review "for errors of law." Id. And, as to discretionary decisions, we review to determine whether the trial court abused its discretion. Id. That means that, "when the law delegates discretion to the trial court," our role is to "determine whether the trial court's exercise of discretion was outside the range of discretion delegated to the trial court." Id . This court may "reverse or remand the order only if it finds that the order is unlawful in substance or procedure and that the substantial rights of the appellant were prejudiced as a result." ORS 147.537(18).
The parties' primary dispute concerns the scope of appellant's constitutional right, as a crime victim, to be heard at sentencing. Appellant's right to be heard is found in Article I, section 42(1)(a), which grants crime victims certain enumerated rights during criminal proceedings, including the right "to be heard at *** sentencing[.]"
Article I, section 42, was enacted by the voters through a ballot measure in 1999. Therefore, our task is to ascertain the voters' intent regarding the scope of that provision. Algeo , 354 Or. at 246, 311 P.3d 865.
The parties suggest that the right of a victim "to be heard *** at sentencing" is similar to the right of allocution, which is a defendant's right to address the sentencing authority "after the defendant has been found guilty **817 but before the penalty is determined." State v. Guzek , 358 Or. 251, 273, 363 P.3d 480 (2015). That right is found in Article I, section 11, of the Oregon Constitution, which, like Article I, section 42(1)(a), focuses on a right "to be heard." Article I, section 11, states that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." And, as this court has held, that right applies at sentencing. State ex rel. Russell v. Jones , 293 Or. 312, 315, 647 P.2d 904 (1982) ("[A] defendant is entitled 'to be heard by himself and counsel' at sentencing."). Given the textual similarities between Article I, section 11, and Article I, section 42(1)(a), we accept, for the purposes of this case, the parties' shared *307 view that a victim's right to be heard at sentencing is similar to a defendant's right of allocution. Thus, our cases describing the scope of the right of allocution inform our analysis of a victim's right to be heard at sentencing.
A defendant's right of allocution has limits. A trial court may prevent a defendant from making irrelevant or unfairly prejudicial statements in an allocution. See State v. Rogers , 330 Or. 282, 301, 4 P.3d 1261 (2000) ("[E]specially in the case of statements by a defendant not made in response to questioning under oath, the trial court has a legitimate concern with assuring that the defendant does not make irrelevant or prejudicial statements."); id . (affirming a trial court's requirement that a defendant in a capital case provide a written version of his allocution for the court to review before the defendant addressed the jury in the sentencing phase of the trial).
In addition, a trial court may impose reasonable limits on a defendant's allocution, even if the defendant's statements are relevant and not unfairly prejudicial, in order to ensure that the sentencing proceeding is "orderly and expeditious." Id . (The right to allocution does not "override the court's authority and responsibility to conduct *** an orderly and expeditious proceeding.") Thus, a trial court may take steps to ensure that that decorum is maintained during an allocution and that the allocution is focused on sentencing issues and is not unduly repetitive or unnecessarily detailed.
**818 We have held that the right of allocution "logically include[s] the right to make any statements relevant to existing sentencing and parole practices." DeAngelo v. Schiedler , 306 Or. 91, 95, 757 P.2d 1355 (1988). As a result,
"a defendant should be able to state any reason why he or she feels sentence should not be pronounced and, in addition to presenting mitigating evidence, be given an opportunity to make any relevant personal comments to the court. This includes, but is not limited to, statements of remorse, apology, chagrin, or plans and hopes for the future."
Id. at 95-96, 757 P.2d 1355.
In Rogers , this court held that a trial court violated a defendant's right of allocution by directing the defendant not to read the last paragraph that he had intended to include in his allocution to the jury. That paragraph stated,
" 'Besides the task before you in this case, I am currently serving a life sentence with a 30 year minimum from the previous Smith trial. And your Honor, at this time I respectfully appeal to you that should this jury spare my life, I ask that I be sentenced to consecutive life sentences.' "
Rogers , 330 Or. at 304-05, 4 P.3d 1261. This court held that both of those sentences were relevant. Id. at 307, 4 P.3d 1261 ("By referring to the prison term that he already was serving, defendant was attempting to obtain a less onerous sentence in this case."); id. at 308, 4 P.3d 1261 ("[W]hile defendant's second stricken sentence ordinarily would be pertinent to only the traditional sentencer, the judge, it had pertinence here to the jury, because under Oregon's death-penalty sentencing scheme, the jury is a participant in the sentencing decision."). As a result, this court concluded that, in striking the sentences from the defendant's allocution, the trial court violated the defendant's right to be heard under Article I, section 11. Based on that violation, among others, this court vacated the defendant's sentence and remanded the case to the trial court for resentencing. Id. at 317, 4 P.3d 1261.
The broad range of topics that a defendant may raise in an allocution is similar the broad range of topics that a victim has the statutory right to raise in an impact statement. Under ORS 137.013, a victim, or a relative of the **819 victim, has the right at sentencing to "reasonably express any views concerning the crime, the person responsible, the impact of the crime on the victim, and the need for restitution and compensatory fine." Although ORS 137.013 was enacted before Article I, section 42(1)(a), neither party has pointed to any ballot measure history of Article I, section 42(1)(a), suggesting that the voters intended a victim's constitutional *308 right to be heard to track the exact scope of the a victim's statutory right to be heard. Nevertheless, ORS 137.013 provides a general description of the topics that, subject to other limitations, voters would have likely expected victims to include in their impact statements.[1]
With those general principles governing allocution in mind, we turn to the parties' arguments in this case about whether appellant's right to be heard was violated, whether she was prejudiced as a result, and whether she is entitled to the relief that she requested-namely, a new sentencing hearing.
Appellant first argues that the trial court violated her right to be heard when it interrupted her twice while she was reading her statement and that she was prejudiced as a result. We disagree. The trial court's first interruption was to direct appellant not to go into detail about an uncharged crime, and the second interruption was to instruct her not to relay any additional online comments about defendant by others. As mentioned, at the show cause hearing, the trial court stated that its objective had been "to focus on the statements that [appellant] wanted to say and how she felt about it, and about the crimes that *** defendant was convicted of." We conclude that those two interruptions during the course of appellant's statement, which was detailed and thorough, did not violate appellant's right to be heard. The trial court had the authority and responsibility to conduct the hearing "as an orderly and expeditious proceeding," Rogers , 330 Or. at 301, 4 P.3d 1261, and did not abuse its discretion when it limited appellant's statement in order to focus **820 on the charged crimes and appellant's own experiences with defendant.
Moreover, the interruptions did not prejudice appellant, who responded to each by continuing with her statement as prepared. When the trial court stated that it did not want to hear the details of the rape, appellant responded that she did not plan to go into any details and continued reading her statement. Later, after defense counsel objected to appellant's description of others' online comments, the trial court asked appellant if she was done with her statement, and appellant replied that she was done with that part of her statement, but not done with her entire statement. After the court instructed her not to describe what other people said, appellant picked up where she left off. Thus, the record does not indicate that appellant changed her statement as a result of the trial court's interruptions, and appellant does not allege that she did. Consequently, those interruptions did not prejudice appellant's right to be heard.
Appellant additionally argues that the trial court violated her right to be heard when it terminated her victim impact statement. It is unclear why the trial court terminated the statement. At the sentencing hearing, the trial court simply told appellant, "Okay. I've heard enough. Thank you." Later, at the show cause hearing, the trial court stated that it had wanted appellant to focus on how she felt about the crimes defendant had been convicted of committing. It also stated that its objective had been "to redirect and focus [appellant] on how the impact-or how the crime impacted her." Those statements explain why the trial court interrupted appellant; they indicate that the trial court wanted appellant to change topics. They do not, however, explain why the trial court terminated appellant's statement. Terminating appellant's statement did not encourage her to change topics; it prevented her from changing topics. Therefore, the explanations the trial court gave do not support its termination of appellant's statement.
Defendant argued at the show cause hearing that many of the topics appellant discussed were irrelevant to sentencing, which is consistent with the trial court's statement that it believed that appellant needed to change topics.
**821 To the extent that the trial court agreed with defendant's argument that termination of the victim's statement was justified because she had been discussing irrelevant matters, we disagree. At the time the trial court terminated appellant's statement, *309 she was describing how defendant had been raised in an environment that failed to hold him accountable for his misconduct, thus fostering and entrenching his antisocial character traits. As an example of that, appellant recalled meeting defendant's mother, who blamed appellant for defendant's alcohol abuse and violence committed against her. Appellant asserted that defendant's family background contributed to the continuing problem that defendant poses to the rest of society.
Those comments were relevant to the sentencing proceeding. Defendants are routinely, and properly, allowed to bring up their family backgrounds during allocution. The purpose of those statements is, among other reasons, to mitigate the defendants' moral culpability by discussing a difficult upbringing or to temper concerns about recidivism by highlighting the strong family support they will have when not in prison. Appellant's comments in this case are the flip side of the latter reason. She stated that defendant does not have, and has not had, the kind of family support that will keep him from committing similar offenses in the future. Those comments were not irrelevant.
Nor were they beyond any limitation the trial court imposed on appellant's victim impact statement. As described above, the trial court told appellant not to go into detail about uncharged crimes and not to relay others' comments about defendant. But, the trial court did not warn defendant that further discussion of those topics would result in termination of her statement, and appellant was not addressing either of those matters when the trial court terminated her statement.
Because appellant's statements were relevant to sentencing and not outside the limits the trial court had imposed, and because the trial court provided no other reasons for the termination and none are apparent from the record, we conclude that the trial court violated appellant's **822 right to be heard, under Article 1, section 42(1)(a), when it terminated her victim impact statement.[2]
Although we hold that appellant's constitutional right to be heard was violated in this case, we do not hold that a trial court cannot place reasonable limits on the content and length of a victim impact statement. A victim's right to be heard, like a defendant's right of allocution, remains subject to the trial court's authority to ensure that the information presented is relevant and not unfairly prejudicial and that the sentencing is orderly and expeditious. Trial courts frequently have full dockets and limited timeframes within which to afford all parties the opportunity to present their cases. Although a trial court may choose to allow a victim to speak for a long time and in great detail, it is not constitutionally required to do so if, for example, the length of the statement would prevent the court from conducting the hearing expeditiously or if the details are cumulative of points already made by the victim.
To accommodate both the victim's constitutional right to be heard and the need for orderly and properly focused hearings, a court attempting to limit an overly detailed or long statement should inform the victim of reasonable and appropriate limitations on the content and length of the statement, so the victim has the opportunity to conform the statement to the limits imposed by the court. If the victim disregards a trial court's appropriate instruction about the permissible content or length of a victim impact statement, the court has the discretion to terminate the statement. That is not what happened in this case, however. The trial court did not instruct appellant that defendant's future dangerousness was not a permissible topic. And, in any event, such an instruction would have been improper.
In response, defendant argues, for the first time before this court, that appellant failed to prove that she was prejudiced by the trial court's termination of her statement, because appellant never told the trial court what **823 topics she intended to cover in the remainder *310 of her statement. According to defendant, without establishing that the remainder of her statement was relevant and would have been allowed, appellant has not established that the trial court prejudiced her right to be heard.
We reject that argument because, when the trial court cut off appellant's statement, we know, at the very least, that the trial court prevented appellant from continuing to discuss the topic she was discussing at the time she was cut off. In this case, that means that appellant was prevented from saying more about defendant's future dangerousness. Because that topic was permissible, and because the trial court had yet to provide appellant with any indication that her statement was too long, cumulative, or otherwise impermissible, we conclude that, by terminating appellant's statement, the trial court prevented appellant from making additional statements that should have been allowed under Article I, section 42(1)(a).
Having established a violation and prejudice, we next consider whether the remedy that appellant has proposed is appropriate. Appellant asked the trial court to vacate defendant's sentence and hold a new sentencing hearing. That is the same remedy this court approved in State v. Barrett , 350 Or. 390, 255 P.3d 472 (2011), another direct appeal to this court involving a violation of Article I, section 42(1)(a). Defendant does not argue that that remedy is inappropriate and does not suggest an alternative remedy. Therefore, we agree with appellant and conclude that she entitled to a new sentencing hearing conducted in accordance with her constitutional rights.
The order of the circuit court is reversed, defendant's sentence is vacated, and the case is remanded to the circuit court for resentencing.

At the show cause hearing, both the parties and the trial court referred to appellant's statutory right to be heard. As noted above, however, the proceeding before us is limited to appellant's constitutional right to be heard. See Algeo , 354 Or. at 244-45, 311 P.3d 865 (so stating).

Before this court, defendant also argues that the trial court had the authority to prevent appellant from continuing because appellant had already spoken for almost 20 minutes. But nothing in the record indicates that the trial court terminated appellant's statement because it was too long.